## VAN WYCK *vs.* BLOODGOOD.

*In the matter of the accounting of the Executors of* ABRAHAM BLOODGOOD, *deceased.*

THE testator, after giving his wife an annuity, and the use of his household furniture, and of certain leasehold premises, for her life ; and to M. L., one of his daughters, a certain annual sum till she attained full age ; then proceeded as follows : " Tenth. The remaining net income of my estate, real and personal, after paying and discharging the annuities aforesaid, I give, devise and bequeath unto my said children, Abraham, John, Ann Catharine, and William, until my daughter M. L., shall arrive at lawful age, equally share and share alike, and from that time until the division of my personal estate shall take place as hereinafter directed, I give and bequeath the whole income of my estate, real and personal, after paying the annuity and interest to my said wife, as aforesaid, unto my said five children, share and share alike. Eleventh. Upon my said daughter, M. L., arriving of lawful age, if my said wife be then dead, if not, then upon the decease of my said wife, I give and bequeath the whole of my personal estate remaining, after satisfying the provisions of this my will, unto my said five children, equally, share and share alike, forever."—Held, that Ann Catharine, one of the daughters of the testator, took a vested interest in the personal estate, which on her decease without issue, before the death of the testator's widow, passed to her legal representatives,—and did not lapse.

The point which determines the vesting or lapsing of a legacy given in future, is, not whether time is annexed to the gift, but whether time is annexed to the *substance* of the gift ; that is, whether the testator has intended it as a *condition* precedent, that the legatee should survive the time appointed.

The mere circumstance that the gift is future, does not make time of the substance of the gift. That question is determined from the intention as gathered from the whole will, and not by particular expressions.

GEORGE GIFFORD *and* B. F. BUTLER, *for R. C. Van Wyck.*

I. The bequest to testator's daughter Ann Catharine, late Mrs. Van Wyck, of the equal fifth part of the testator's personal estate (remaining after satisfying the provisions of the will), was vested in her, notwithstanding she did not survive until the death of the testator's wife ; time being annexed in this case, not to the substance of the gift, but merely to its payment.

1st. The testator, before reaching the clause on which the question arises, had made, to each of the children therein named, immediate and absolute bequests ; and the whole frame of the will shows, that he designed them to be under his will, as they were by their relationship to him, the chief objects of his bounty.

2d. The gift in question, is not limited *on the condition* that the children to whom it is made, shall, all, or any of them, be living at the death of his wife. The word " upon," in the present case, implies no such condition, but on the contrary, merely defines and fixes the *time* when the gift is to be enjoyed.

3d. The contingency implied in the will by " if," is annexed, not to the living of the testator's children, but to the time of his wife's decease. His use of this word denotes an intent, not to make his gift to the former dependent on their *living* to any particular period, but only to postpone their reception of it, until the death of the latter, an event certain to happen, though its particular time could not be foretold.

4th. The evident object of the testator, was only to *post-*

*pone a distribution* of his personal property during the life of his wife, and until the youngest child (Maria Louisa) became of age, and not to postpone the gift.

(*a*) Such postponement was necessary, because annual appropriations were to be made out of it for his wife during life, and for Maria Louisa, till of age.

(*b*) To provide for these appropriations was evidently the object, and only object of this suspension, and the time of the distribution was, therefore, naturally made to depend upon both of these events.

(*c*) Every object, therefore, to be attained by the suspension, was fully reached by postponing the time of the *distribution*, not the gift.

(*d*) It is fully apparent, that independent of the object of providing for the appropriations to the wife and Maria Louisa, no suspension of the distribution of the personal property would have been made, and that each child would have taken possession of his whole share, immediately on the death of the testator.

(*e*) Because, if the intention of the testator had been otherwise, then the time of the suspension would have been made to depend upon some other event, and one which would have corresponded, in time, with the object to be attained.

(*f*) It is irresistibly certain, that it was no part of the *direct object* of the testator to withhold from any of the children the full enjoyment, or even the possession of the personal property for *any* length of time; but that the time for which the distribution and possession was suspended, was merely *incidental* to the attainment of the object of the annual appropriations for the wife and Maria Louisa.

(*g*) Limiting the possession to the death of the wife, and to Maria Louisa arriving at 21 years of age, as the testator has done, is entirely inconsistent with an intention to barely give the *use* of the property to his children for life.

(*h*) If suspending from his children, either the gift or

its possession, had been any part of the *direct* object and intention of the testator, so that it should not come to them, or to the representatives of those dying without issue, then, most certainly he would have so provided, and made the time of the suspension correspond with the object, by giving them the income for life, and the principal to their children, in like manner as he did with the real estate.

(*i*) Having made such a provision as to the real estate, and the like not being done as to the personal property, is evidence, that in the latter case he had not a similar object in view, and that it was not his intention to do more than to suspend the distribution of his personal property, barely to subserve the purpose of the appropriations for the wife and Maria Louisa.

(*j*) To suppose that the testator did not intend to make the gift absolute, is to assume that he intended to give his children unequal interests, which is most palpably contrary to the whole tenor of the will. It would operate so, because in that case, if one should die, say one day before the wife, his representatives would take nothing; when, if another should die one day after the wife, his representatives would take his whole share.

(*k*) If this bequest be made dependent on the contingencies mentioned, then, in case Maria Louisa had survived the widow, and still died before attaining the age of 21 years, this whole bequest would have failed, and none of the children could take any part of the personal property by the will,—as neither of the contingencies in that case would or could happen,—showing that the testator could have had no such intent.

(*l*) The word "forever," used by the testator in the bequest of the personal property, contrasted with the words, "during their natural lives *only*," as used in the bequest of the income of the real estate, accruing after a division of the personal property, shows:

(1.) That in the former case, he intended to make the gift absolute; and,

(2.) That when he intended to limit a gift, as in the latter case, he did it by strong and clear terms.

5th. The gift in question is of an equal share in the *principal* of the personal estate, preceded by a gift to each legatee of an equal share in the *income*, and after Maria Louisa attaining the age of 21, of the *whole* income of such estate. This of itself, and independent of the reasons above stated, vests the principal.

II. The limitation over in the 12th article of the will, does not apply to the personal property.

1st. Subdivision 4 of Point I., applies also here to show, that it was the intention of the testator to bequeath his personal estate in equal shares, absolutely to his five children, and that, therefore, he would not subjoin a limitation to defeat this object.

2d. It does not apply in terms.

(*a*) The time fixed by the will for the final distribution of the personal property, is upon the death of the wife, if Maria Louisa shall then be of age, if not, then the time of her attaining the age of 21 years.

(*b*) By the 10th article, and the first clause of the 11th article of the will, there is a complete disposition of the personal property and of the income of the real estate which shall accrue up to the death of the wife (if Maria Louisa shall then be of age), and nothing more, leaving the real estate and its income, which shall accrue after the death of the wife, still to be disposed of.

In the 2d clause of the 11th article, the testator commences thus to dispose of his real estate; " But my real estate *from thenceforth* I dispose of," &c. Clearly stating by the words, " from thenceforth," that this disposition is to commence after the final division of the personal property, and to take effect only from that time. He then devises the fee simple of the real estate to his grandchildren, absolutely, and the income of the real estate, which shall accrue after the division of the personal pro-

perty, equally to his five children for life *only*. This then, completes a full and final disposition of the whole estate, except such part of the income of the real estate, as shall accrue after the death of the wife (that is, the time when the personal property is to be distributed), and after the death of a child, and which would have belonged to such child if living. A further provision is, therefore, necessary to complete a disposition of the whole estate.

(*c*) In the 12th article of the will, is found this provision, expressly and fully supplying this deficiency and nothing more, viz.: A provision providing that in case of the death of a child, leaving lawful issue, such issue shall take, "*in the mean time, the share*" of the parent; but in case of the death of a child, without leaving lawful issue, the share of such child " shall go to and be enjoyed by my surviving children," &c., *until the disposal of my real estate shall take effect*, as provided for in the said 11th article," that is, until the real estate shall be divided among the grandchildren.

This construction, then, attains the following important results :

(1.) It completes a disposition of the whole estate.

(2.) Gives effect to every part of the will.

(3.) Preserves consistency in the operation of all its provisions ; and

(4.) Carries out the evident intention of the testator.

(*d*) The use of the phrases " in the mean time," and " until the disposal of my real estate shall take effect," with their context in the 12th article of the will, expressly confines the limitation and the words "share and portion," mentioned in that article, to that portion of the income accruing after the division of the personal property.

(*e*) If this limitation over, were to refer to the personal property, then, in case of the death of a child, his "share and portion of the principal of the personal property, is to go to, and be held by the surviving children," until the disposal of the real estate shall take effect. What, then,

after that time is to become of such principal? Such construction leads to an absurdity, showing that such construction is both contrary to the plain import of the terms, and contrary to the intention of the testator.

Again, under such construction, suppose all the children to survive the widow. On her death, the personal property is all distributed among them, each taking his share to hold "forever." Now suppose that after such disposition, and prior to the disposal of the real estate taking effect, one of the children die without issue. How, in such case, are the words "share and portion" used in the 12th article, to apply to the principal of the personal estate, the same having been previously finally distributed, and perhaps spent? But again, suppose the child dying under such circumstances, to leave issue, how are the terms "in the mean time" to apply to his part of the principal of the personal estate? They can have no such application; it would be, equally, violence to the language and intention of the testator.

(*f*) If the limitation over, mentioned in the 12th article of the will, be made to apply to the principal of the personal property, then the same is void (as will more fully appear by the next general point), therefore, the Court will not give it such construction.

III. If the limitation over, in the 12th article, apply to the *personal* estate, it is inoperative and void.

1st. It is repugnant to the right of property, and absolute power of disposition given to the legatees by the bequest in the 11th article. (*Paterson* vs. *Ellis*, 11 *Wendell*, 259, *and Cases cited by Savage Ch. J., p.* 275 to 277.)

2d. It involves a suspension of the absolute ownership of the testator's personal estate "for a longer period than during the continuance, and until the termination of not more than two lives in being at the death of the testator," and is therefore contrary to the statute (1 *R. S.*,* 763, § 1), and void in its creation.

(*a*) The absolute ownership of the personal property is first suspended, in this case, during the life of the testator's widow, by means of the two annuities of $600 each, which are a charge on the income of the personal, as well as on the rents and profits of the real estate, and which annuities, and the fund out of which they are payable, are inalienable. (1 *R. S.*, 725, § 36; *p.* 730, §§ 63 *and* 65; *p.* 773, § 2; *Gott* vs. *Cook*, 7 *Paige*, 532; *S. C.*, 24 *Wend.*, 641.)

(*b*) It is further suspended by the annuity to the testator's daughter, *Maria Louisa*, to be paid to her guardian during her minority, which, by possibility, might have been for her whole life, thus suspending the absolute ownership for two lives. (*Cases above cited ; Hawley* vs. *James*, 5 *Paige*, 318; *S. C.*, 16 *Wendell*, 61; *Harris's Executors* vs. *Van Schaick*, 7 *Paige*, 221; *S. C.*, 20 *Wend.*, 564.)

(*c*) During the life of the widow, the income of the personal estate, as well as of the real, remaining after the payment of the annuities to her and (during the minority of Maria Louisa) to Maria Louisa, is to be equally divided between the five children, whose several shares during this period are also inalienable.

(*d*) By the terms and necessary effect of the limitation over, if it applies to the personal estate, the absolute ownership thereof will be suspended *until the death of all the five children ;* because, " in the *mean time*," the *income only* is to be divided between the children and the issue of such child or children as may have died leaving issue, and the survivors of such child or children as may have died without leaving issue, and during the whole of this period, the right of the several *cestui que trust* to the income will be inalienable.

(*e*) The capital of the personal estate if the limitation over applies, is not to be divided until the deaths of all the five children, when it is to go to the *lawful issue* of such children respectively ; until which time the capital

21

will be inalienable, because the parties who are to take cannot be ascertained until the expiration of the last of said five lives, and because the absolute ownership is not, in any case, so disposed of, as to vest within any two as-certained and definite lives in being at the creation of the estate.

IV. The amount expended by the acting executors for improvements on the real estate, should be charged to the principal of the real estate.

JOHN B. KING *and* GEORGE WOOD, *for the Executors and others.*

I. The bequest of the personal estate in the eleventh clause of the will to the children upon the death of his wife, connects that event with the substance of the gift, and being so connected, the gift is not absolute to the children, and does not vest in them till the event happens. (*Toller's Executors*, 171; 11 *Wendell*, 260, 269; 12 *Vesey*, 75.)

II. This is the general rule, and there are no circumstances creating in this case an exception, and defeating it.

III. These legacies of the personal estate are not postponed in order to accommodate the dispositions thus made with the condition of the estate.

1st. From the context of the will, it is manifest that the personal estate is amply sufficient to pay all the legacies, and secure a surplus thereof to pass under the eleventh clause.

2d. There is no provision requiring the executors to retain this personal estate in the condition it was in at his death. On the contrary, they are upon general principles to convert it into money.

3d. A will works by fractions, and a portion of the principal could be set apart to meet the particular annuities and dispositions provided for.

4th. The annuity to the niece must be so provided for, in case she survives the youngest daughter, and the widow's life.

IV. There is no absolute residuary clause requiring an exception to the general rule in the first point.

V. The disposition of the income of the personal estate in the tenth clause of the will, does not indicate an intent to except the disposition of the principal of the personal estate from that general rule, and to vest it at the testator's death.

VI. To have that effect, that income should, in the mean time, be given to the children absolutely.

VII. It is not so given to them, but by the 12th Section of the will, on the death of a child, the share of that income so given to that child, goes to the issue, if any; if none, to the surviving children.

1st. The event of the death of the widow is accompanied with two other events named in the will; viz., the distribution of the principal of the personal estate, and the disposal of the real estate, all of which take place at the same time.

2d. Though the real estate is disposed of by the will, yet the disposal takes effect on the death of the widow; viz., to the children for life, with remainders to their issues in fee. A portion of this, viz., the provision for either the children or grandchildren, does not constitute the disposal.

3d. The share or portion referred to in the 12th clause, is the share accruing prior to the three concurring events above mentioned; viz., the disposal of the real estate, the

distribution of the personal estate, and the death of the widow.

4th. The share thus referred to can only mean the shares of income mentioned in the tenth clause of the will; viz., the remaining net income of the estate, real and personal, in equal shares.

5th. There is nothing expressed or implied that will confine it to a part of that net income, so as to exclude either the real or the personal.

6th. The dispositions in the 11th clause, which apply first to personal, and then to real, indicate no such intent.

The mere fact that the real estate is last provided for therein, indicates no intent to confine it to the income of the real estate, accruing prior to the occurrence of the three above-mentioned events.

7th. A general reference in the 12th clause to that net income disposed of in the tenth clause, consisting of real and personal estate blended together, necessarily refers to and embraces both, neither being excluded expressly, nor by any fair implication.

VIII. The general intent to be collected from the whole will is, to keep the estate together till the death of the widow,—till both heads of the family are gone. This is effected by the construction above mentioned, and is a favorite limitation with testators who want to have the absolute disposal of it themselves, but to prevent such disposal of it after their departure for a considerable time at least.

THE SURROGATE. The Testator by the fourth, fifth, and seventh articles of his will, as modified by the codicil, gave his wife an annuity of six hundred dollars, together with the use of his furniture, and of the leasehold premises, No. 70 Murray Street, in the city of New-York, for her life;

and by the eighth article, as modified by the codicil, he bequeathed to his daughter Maria Louisa, six hundred dollars per annum, until she should attain the age of fifteen years, and from that time to her arrival at lawful age, the sum of eight hundred dollars per annum. By the ninth clause, an annuity of $100 was given to his niece, which, in consequence of her decease, became inoperative, and was revoked by the codicil.

Having made these dispositions, the testator then provided as follows:

" *Tenth.* The remaining net income of my estate, real and personal, after paying and discharging the annuities aforesaid, I give, devise, and bequeath unto my said children, Abraham, John, Ann Catharine, and William, until my daughter Maria L. shall arrive at lawful age, equally, share and share alike; and from that time until the *division* of my personal estate shall take place, as hereinafter directed, I give and bequeath the whole income of my estate, real and personal, after paying the annuity and interest to my said wife, and the annuity to my said niece, as aforesaid, unto my said five children equally, share and share alike.

" *Eleventh.* Upon my said daughter Maria L. arriving of lawful age, if my said wife be then dead, if not then, upon the decease of my said wife, I give and bequeath the whole of my personal estate, remaining after satisfying the provisions of this my will, unto my said five children, equally, share and share alike, forever.

" But my real estate from thenceforth, I dispose of in manner following, to wit: the use and income thereof, I give, devise and bequeath, unto my said five children, equally, share and share alike, during their respective natural lives only; and the fee simple or absolute estate therein, I give, devise and bequeath unto the lawful issue of my said children respectively, to take in like manner, as such issue would take under our statute of descents, had I died intestate; but in case there be no such lawful issue, then

I give, devise and bequeath, the fee simple or absolute estate in such share or portion, to the heirs at law of my said children so dying without lawful issue.

" *Twelfth.* On the death of any of my said children before the disposal of my real estate, as provided for in the last article of this my will, shall take effect, leaving lawful issue, such issue, solely if one, collectively if more,— shall take in the mean time the share and portion of its parent, but if any of my children should so die, without leaving lawful issue, then the share or portion of such child, so dying without lawful issue, shall go to and be enjoyed by my surviving children, and the lawful issue of such of them as may be dead, or their representatives, until the disposal of my real estate shall take effect, as provided for in the said eleventh article."

The testator nominated his wife and children executors, and gave to them all his real and personal estate, in trust, to carry into effect the provisions of his will.

His daughter, Maria Louisa, arrived at age in February, 1848 ; Ann Catharine died 9th June, 1848, without leaving issue, and the widow of the testator is still living.

Richard C. Van Wyck, the husband of Ann Catharine, now insists, that the gift of the personal estate by the will, was vested in his deceased wife, and passed on her death to her representatives.

In considering this question, I propose, first, to examine the eleventh article of the will, which contains the bequest, by itself; and secondly, to ascertain how far the other portions of the will, explain, develope, or limit its terms and meaning.

I. The gift in the eleventh article is made " *upon*" the death of the testator's wife, a term simply noting a particular time dependent upon a specified event, and synonymous in such a relation with " on," and not with " *cum*" and " *si*," which, according to the construction of the Latin, are generally used in a form expressing contingency.

There is a large class of cases, to which no exception

exists, where, by the terms of the gift, the time is connected with some event to happen to the donee, such as marriage or puberty, so as to make a description of the person who is to take, and necessarily to imply, that if the legatee does not sustain the character, the legacy will fail. (*Dawson* vs. *Killett*, 1 *Bro. C. C.*, 119.) Death, in such a case, before the event occurs, in removing the legatee, prevents the happening of the event, and the completion or fulfilment of the description. Such legacies are palpably conditional from the very nature of the case, because the life of the beneficiary is involved and included in the very contingency specified; so that the contingency does not transpire, because the legatee dies.

But where the time is not connected with an act to be done by, or an event to happen to the legatee, but on the contrary, with some independent occurrence, such as the death of another person,—that being a thing which must happen, and the time, therefore, being in that sense certain, there would seem to be nothing in the mere specification of such a future time, which in itself implies a condition. There is, however, authority adverse to this idea. In *Smell* vs. *Dee*, 2 *Salk.*, 415, Lord Cowper held a gift to the two children of J. S., " *at the end of ten years*" after the testator's decease, to fail by the death of the legatees, before the expiration of the ten years. The cases in *Dyer* and *Ventris*, which were referred to in support of this determination, relate to legacies given on conditions connected with the legatee, as marriage and attaining age, and consequently do not meet the point. Swinborne is also cited in aid of the same position, but so far from sustaining the case put, he expressly asserts, that a bequest to H. B., at a fixed time, as £100 at Easter, A. D. 1600, vests the legacy, notwithstanding the death of the legatee before the time. (*Swinborne, Part VII.* § 23; *Domat. L.*, 111, *Tit.* 1, § 8, *Art.* 12.) Now, I do not mean to say, that there is no other case except *Smell* vs. *Dee*, which decides that a legacy given at a certain time, lapses by the previous death of the

legatee, but after some examination I have met with none.*
It is true the books are full of decisions to the effect, that
where the time is so annexed to the legacy as to be of the
substance of the gift, a condition is implied, that the donee
shall live till the time arrives, in order to enjoy the bounty.
This is an abstract proposition taken from the civil law,
which there is no occasion to controvert. The point is,
how to apply it, and whether the mere annexation of a cer-
tain time to the legacy, does *ipso facto* make that time of
the substance of the gift. The niceties and refinements
in which the civilians indulged, are well exemplified in
Swinborne, who propounds, that a legacy given from and
after a certain time, is vested, because the time is certain
*when*, but a legacy given when the testator's son shall die,
is not vested, because the time is uncertain *when* that will
happen. (*Swinborne, Part IV.*, § 17, *vide Pothier's
Pandectes, Part IV.*, L. 30; *pt.* 3, 275, *Vol.* 12, *p.* 2;
*Domat., L. IV., Tit.* 2, § 9, *Art.* 16.) Now, it is mani-
fest that in both of these cases, the only uncertainty, so far
as the legatee is concerned, is whether he shall live till the
time comes, if it be a fixed day, or the event happens, if it
be the death of another. The time must arrive in either
case, and so likewise, in either case, the legatee may die
before, yet in one instance according to this rule, the legacy
is vested, and in the other it is not. The Lord Chancellor,
in *Pinbury* vs. *Elkin,* 1 *P. Wms.,* 564; (see also as to his
inaccuracy, *Tate* vs. *Hilbert,* 2 *Vesey,* 118), speaks of *Swin-
borne's Cases on Legacies,* as "darkly put," with "many
inconsistencies;" and Powell, his learned editor, observes,
that his distinctions and criticisms on this subject, are not
agreeable to the law of England in such cases, but that
" according to that law, where either real or personal es-
tate is given upon a contingency, and that contingency

---

* In *Bruce* vs. *Charlton,* 13 *Simons,* 65, it was unnecessary to decide the
point, for the bequest was to certain persons, or " such as should be living" at
the end of a certain time. Nor were the cases of *Chevaux* vs. *Aislabie,* 13
*Simons,* 71; *Young* vs. *Macintosh, Ibid,* 445, analogous.

does not take effect in the life-time of the first devisee or legatee, yet if the contingency happens, if the estate be real, his heirs, if personal, his executors, will be entitled to it." (2 *Powell's Swinborne*, 584, *note ; Chauney* vs. *Graydon*, 2 *Atkyn.*, 616.) Though this comment is not justly accurate in all its breadth, yet it is important in showing that the almost scholastic niceties of the civilians, have not been adopted *in extenso*.

The subject of the effect of a simple limitation of time by the word " *when*," was discussed in *May* vs. *Wood*, 3 *Bro. C. C.*, 473, and the Master of the Rolls said, " It has been contended that the word ' when' must be synonymous to ' *if*,' and, consequently, that the legacy has never vested. Has the Court ever adopted such a construction ? On the contrary, all the cases for full half. a century upon pecuniary legacies, have determined that word, not as denoting a condition precedent, but only marking a period when the party shall have the full benefit of the gift ; except something appears upon the face of the will, to show that his bounty should not take place unless the time actually arrived, and not where he has merely used the word *when*, for the sole purpose of postponing the time of payment." The gift in that case was to the testator's two daughters, " to be equally divided between them, when they should arrive at twenty-four years of age ;" but Lord Alvanley said he decided the point without any reference to the words, " to be equally divided," and that " all the cases establish this principle, that when the time is mentioned as referring to the legacy itself, unless it appears to have been fixed by the testator, as absolutely necessary to have arrived, before any part of his bounty can attach to the legatee, the legacy attaches immediately, and the time of payment is merely postponed, not being annexed to the substance of the gift."

The position advanced in *May* vs. *Wood*, was criticised by Sir William Grant, in *Hanson* vs. *Graham*, 6 *Vesey*, 238, who on the other hand declared, that " no case has determined that the word ' *when*,' as referred to a period of

life, standing by itself, and unqualified by any words or circumstances, has been ever held, to denote merely the time at which it is to take effect in possession; but standing so unqualified and uncontrolled, it is a word of. condition, denoting the time when the gift is to take effect in substance. That this is so, is evident upon mere general principles, for it is just the same as speaking of an uncertain event, whether you say ' when,' or ' if' it shall happen. Until it happens, that which is grounded upon it cannot take place. In the civil law, the words ' *cum*' and ' *si*,' as referred to this subject, are precisely equivalent, and from that law we borrow all, or at least the greatest part of our rules upon legacies, and particularly the rule immediately under consideration, with reference to the words by which a testator denotes his intention as to the gift taking effect, or taking effect in possession."

I do not understand Sir William Grant, as laying down the broad doctrine, that the word "*when*," or any other specification of a future time, of necessity imparts a condition, but that it has that effect " *as referred to a period of life*" of the legatee, or some other event, as " when he shall attain 21," or " when he shall marry." All the citations he makes from the Civil Law, and the entire current of his argument are apposite only to that limited proposition, and there can be no doubt, that to such an extent, the doctrine is thoroughly grafted into the law of England. But that the mere specification of a future time in connection with the gift, as a legacy to A., on the death of B., in itself postpones the gift and makes it conditional, is altogether another question. Lord Loughborough, in *Monkhouse* vs. *Holme*, 1 *Bro. C. C.*, 299, thus treats it: " I rather take the rule to be, that where the time is annexed not to the gift, but to the substance of the gift, there it lapses by the death of the legatee." " If the day is certain, it is vested, but where uncertain, the true question will be, whether it is in the nature of a condition; for if it is conditional, then in the very nature of the thing, the time

is annexed to the substance of the gift, as in the case of marriage, puberty, or of any other situation of life, when the arrival of the time is a condition, without which the testator would not have made the gift." " I do not agree that a legacy given in future, where the legatee dies before the time, lapses, but when the time is annexed to the substance of the gift." " The circumstance of introducing a legatory subject by the word ' after,' cannot be construed so to affect the gift as to make it a condition. The solid, substantial distinction is, whether the testator meant it as a condition. This cannot be construed as making a new rule of law. The rule which I take to be that of the civil law, not being broken in upon, but allowed and construed as it was by Lord Talbot, Lord Hardwick and Lord Thurlow."

Sir James Wigram, in a recent case (*Leeming* vs. *Sherratt,* 2 *Hare,* 16), sustains the same course of reasoning. There, the testator gave all his personal estate to his executors in trust, " to pay and divide the money arising therefrom, *so soon as his youngest child should attain the age of twenty-one,* unto and equally amongst his children, share and share alike." The entire gift was in this direction to pay and divide, as soon as the youngest child reached 21 ; the event happened, the youngest child did attain that age, but John, one of the sons, died before ; and yet the share directed to be paid to him, was held to pass to his representatives. In arriving at this result, the Vice-Chancellor, alluding to the cases in which it had been declared, that where a legacy has been given at a future time, the legatee can claim nothing, unless he is living at that time, said,—" that the Court has in many cases expressed itself, very nearly in this manner, I do not deny, but I am satisfied I should be misapplying the rule intended to be expressed by the Court in such cases, if I were to hold, that John's share of the residue was not transmissible to his representatives, only because he died before the testator's youngest child attained twenty-one." " I have examined most of the reported cases upon the sub-

ject, and am confirmed in the opinion, that the question is one of substance and not of form. The question in all the cases has been, whether the testator intended it as a condition precedent, that the legatees should survive the time appointed by him for the payment of their legacies, and the answer to this question has been sought for out of the whole will, and not in particular expressions only, like those relied upon in this case." The learned Judge then proceeds to comment approvingly upon the rule as stated by Lord Loughborough, in *Monkhouse* vs. *Holme*, and by Lord Alvanley, in *May* vs. *Wood*, and concludes, that the " mere circumstance, that the gift is future, does not furnish a simple rule of decision, but is a single fact not in itself conclusive."

I feel inclined, therefore, to hold on this review of the authorities, that the gift to the testator's children, by the 11th article, on the youngest daughter attaining age, and on the death of the widow, was not necessarily suspended until the occurrence of those events, but regard may be had to other circumstances to ascertain the intention of the testator.

It is certainly a sound position, that as a general rule, the testator is to be supposed as intending to vest the legacies at his death, and there should be plain indications of a different design to take any particular case out of the rule. This primary presumption is only to be defeated by a clear intention to defer the vesting, and where the meaning is doubtful or ambiguous, the Court will lean against the exception sought to be established. (*Elwin* vs. *Elwin*, 8 *Vesey*, 557 ; *Gaskell* vs. *Harman*, 11 *Vesey*, 498.) In *Vize* vs. *Stoney*, 2 *Drury and Walsh*, 672, Lord Plunkett approves of the doctrine laid down by Williams, in his Treatise on the Law of Executors and Administrators, " that the rule is always subservient to the intention of the testator, and that in cases of exceptions to the general rule, the intention of the testator, that the legacy shall not vest, must

be expressed with certainty, to prevent the operation of the general rule."

Standing by itself, the 11th article admits of the following criticism.

1. The gift contained in it is to the testator's "said five children," *nominatim* (they having previously been named), "equally, share and share alike, forever." It created a tenancy in common, and by construction of law, there is no survivorship, as in case of a joint-tenancy.

2. The gift is not to the children, *or* such as should be living at the time of the division, and there is consequently no express clause of survivorship.

3. On the decease of any of the children before the death of the widow, &c., there is no limitation of his or her share over to issue, so that a child dying, leaving issue, the issue would not take, but the share would lapse.

This circumstance is not controlling, otherwise the absence of a clause of substitution would in all cases prevent a failure of the legacy, an idea wholly untenable. But the want of a limitation to the issue of a child, a legatee over age, where there is no provision for survivorship, affords a strong presumption the testator intended his children to take vested interests. "If the will," says the Vice Chancellor in the case already cited (2 *Hare*, 22), "had not contained the clause of substitution, and one or more of the testator's children had died, leaving lawful issue before the youngest had attained twenty-one, the argument in favor of the legacy being transmissible, would have been irresistible."

4. The bequest in the 11th article is of the whole personal estate "*remaining*," after satisfying the other provisions of the will, and being thus in essence a disposition of the residue, if any share lapses, the testator as to it, has died intestate.

In *Leake* vs. *Robinson*, 2 *Meriv.*, 386, Sir Wm. Grant concedes that "there is certainly a strong disposition in the Court to construe a residuary clause so as to prevent

an intestacy with regard to any part of the testator's pro-
perty." (*Booth* vs. *Booth*, 4 *Vesey*, 399.)    And in *Lee-
ming* vs. *Sherratt*, Sir James Wigram declares broadly,
" If there is any case which decides, as an abstract propo-
sition, that a gift of a residue to a testator's children upon
an event which afterwards happens, does not confer upon
those children an interest transmissible to their represen-
tatives, merely because they die before the event happens,
I am satisfied that case must be at variance with other
authorities."

The result is, therefore, that if we regard the time
pointed out for the distribution of the capital of the per-
sonal estate in the 11th article, as annexed to the sub-
stance of the gift, we ascribe to the testator the intent not
to give any of his children, most of whom were then ad-
vanced in life, any vested interest,—he at the same time
making no provision for survivorship, or for transmission
to issue in case any of them should die before the period of
division, so that in such a contingency, intestacy is the
direct consequence.  Such a construction should not be
favored, and I think if the case stood on the 11th article
alone, I should be bound to consider the bequests as
vested.

II. I will now inquire how far this conclusion is shaken
or confirmed by the other portions of the will.

1. The most explicit reference to the disposition of the
personalty by the 11th article, is contained in the 10th
article, where it is spoken of as the " *division* " of the
personal estate, a term rather applicable to payment and
distribution, than to a future gift.  Since the case of *May*
vs. *Wood*, the word " divide " has been esteemed in con-
nection with a future period, as indicating a time fixed
for payment—for the enjoyment of the absolute possession,
and not as operating to postpone the gift.  The expression
is also in strong contrast with that applied by the testator
to his real estate.  He speaks of the " disposal" of his
real estate, and the " division" of his personal.

2. It is not an unimportant fact, that the testator appointed all his children executors and trustees to carry his will into effect. It was not his desire to withhold from his children the *actual* management and legal control of the estate, but only to direct the *mode* of its management. *Love* vs. *L'Estrange*, 5 *Bro. Par. Cas.*, 59, was decided on the principle that a present bequest of residue to executors in trust to pay at a future day, is a present vested gift to the beneficiaries; and the mere appointment of a trustee, has been held so to control the construction as to make a legacy vested, when without such an appointment, it would have been otherwise. (*Branstrom* vs. *Wilkinson*, 7 *Vesey*, 422; *Patterson* vs. *Ellis's Executors*, 11 *Wend.*, 259, *and App.*, 671; *Roper* 1, 573.)

3. After paying the annuities, the entire income of the estate was given to his children. There is no principle better recognized, than that the gift of the intermediate interest, previous to the time appointed for the receipt of the capital, shows that the vesting of the principal was not intended to be postponed. Here the testator gives the complete enjoyment and possession of his estate to his children, in subservience only to the postponement of its division and absolute right of property, until the majority of his youngest daughter, and the decease of his wife, for whom he had made special provision.

4. When a fund is bequeathed in fractional interests in succession, at periods which must arrive, the interests of the first and subsequent takers will vest together *uno instanti*, on the death of the testator. Bloodgood, the testator in this case, disposes of his whole estate, the entire income to the death of his wife, and on her decease, and the majority of his youngest daughter, the entire principal. This created in substance an intermediate vested estate in the income, with a remainder in absolute possession of the principal on the happening of those events. If the income had been given to others, as for example, to the wife for life, and then on her death, the principal to the

children, there could be no doubt a remainder vested in the children immediately on the testator's decease. It certainly cannot weaken or impair the effect or operation of this rule, that the same persons entitled to the remainder, take the previous vested interest in the income, instead of other persons.

In *Blamire* vs. *Geldart*, 16 *Vesey*, 314, the testator gave his whole property to his wife, and "*at her decease*," £200 to George Pringle. Pringle died before the wife, and Sir Wm. Grant held the legacy vested, saying that "the will, no matter in what order, divides the fund between these two persons, giving to one the interest for life, and to the other, the capital at her decease. In effect and substance, Pringle took a remainder which vested immediately upon the testator's death, and was not defeated by his own death in the life-time of the wife."

This rule applies equally, whether the interest or the fund itself be given to the first taker for a certain period, except that where the *interest* alone is bequeathed in the first instance, the remainder will not vest during the continuance of the particular estate, if the context of the will clearly shows such was the intention. (1 *Bro. C. C.*, 298; *see also Barnes* vs. *Allen*, 1 *Id.*, 181; *Roebuck* vs. *Dean*, 4 *Id.*, 403.) In *Monkhouse* vs. *Holme*, the interest was given to the testator's wife for life, and "*from and after her death*," the principal went over. In *The Attorney General* vs. *Crispin*, 1 *Bro. C. C.*, 386, the bequest was £50, "*after*" the death of certain annuitants, to each of the children of D. R. In *Benyon* vs. *Maddison*, 2 *Bro. C. C.*, 75, the direction was to pay the interest to H. L. for life, and "*after her death*," the testator "*then*" gave to five persons £100 each. In *Scurfield* vs. *Howes*, 3 *Bro. C. C.*, 90, the interest of £500 was given to S. for life, and "*after*" her death, the principal to her son and daughter. In *Cousins* vs. *Schroder*, 4 *Simon*, 23, the testator directed £100 to be invested for his daughter for life, and after her death, *the capital to be divided* among her chil-

dren. (See *Lane* vs. *Goudge*, 9 *Vesey*, 225; *Locker* vs. *Bradley*, 5 *Beavan*, 593; *Pinbury* vs. *Elkin*, 1 *P. Wm.*, 563.) In *Taylor* vs. *Langford*, 3 *Vesey*, 119, the testator, as to the residue, directed the interest to be paid to his two sisters, and "after their decease, the principal to be paid to their children equally." In all these cases, though some of the legatees of the principal fund died before the life-tenant, they were held to take vested gifts transmissible to their representatives. The same point will be found followed out in *Wadley* vs. *North*, 3 *Vesey*, 364; *Morgan* vs. *Williams*, 14 *Law, Jr., N. S.*, 449; *Watson* vs. *Watson*, 11 *Simon.*, 73; and in *Kimberly* vs. *Tew*, 4 *Dru & W.*, 139, where Sir Edward Sugden says the Courts have ever been anxious, that, where the contest was between surviving and the representatives of deceased children, the interest should vest in the deceased children, and that where some of the children could take, the Court had struggled to let in all.

5. Taking the whole will of Mr. Bloodgood together, all his estate is bequeathed to trustees to give the income to his children, subject to the annuities and specific allowance to his daughter Maria L., until the latter attain 21; after which, the whole income is divided among his children equally, deducting the annuities, and on the death of his wife, the whole principal is to be shared among them. The division of the principal is postponed till the death of his wife, and the majority of his youngest daughter, and it is reasonable to inquire why? The provision for the wife explains this, her interest terminated at her death, when an important charge on the estate ceased. So likewise as to the majority of the daughter Maria L., that was an event, previous to which the testator had given his other children more than their equal share of the income, and on the occurrence of which he restored to her a full proportion. Can any other reason be found in the will for the postponement of the division of the personalty? If the testator had in terms given the principal fund to such

of his children as should be living at his wife's decease, that would have been a sufficient reason for suspending the vesting till that period. But he, on the contrary, gives the whole interest and intermediate income to his children, subject only to the allowance in favor of his wife, and there is no possible motive to assign for deferring the distribution of the principal till her death, except that the division was suspended in consequence of the annual appropriations for her benefit,—for the convenience of the fund or property. (1 *Jarman on Wills, pp.* 756, 763.). In *Leake* vs. *Robinson*, Sir Wm. Grant, commenting upon Lord Alvanley's decision in *Booth* vs. *Booth*, concedes that the important circumstances indicating an intention to give vested legacies in that case were, 1st, a bequest of a residue; 2d, that the legatees were adults; 3d, the whole interest was given to them absolutely; 4th, there was no survivorship between the legatees; and 5th, there was no bequest over in the event of the death of both or either, " so that intestacy must have been the consequence of death before marriage." So far as the contingency of the death of the testator's widow is concerned, all these circumstances, and more also, are present in this case. The gift is 1st, of a residue; 2d, to the testator's children, who are made executors; 3d, there is no survivorship; 4th, there is no limitation over; 5th, the whole interest is given subject to certain charges, which indicates, 6th, that the division of the principal is deferred only for the convenience of the estate. I am of opinion, therefore, that the share of Mrs. Van Wyck of the personalty, was intended to vest in her on the death of the testator, and on her decease passed to her representatives.

III. It remains then to consider the effect of the provision contained in the 12th clause of the will, whether or not the limitation there provided, was intended to affect the share of any deceased legatee in the principal fund, and if so, whether the contingency mentioned in that article has arisen. Without dwelling at length upon this

article, I may say that its application seems to me to be limited to the income. On the death of any of his children " before the disposal" of his real estate shall take effect, leaving lawful issue, such issue are, " *in the mean time,*" to take the share and portion of the parent; but if any of his children should " *so die,*" that is, before the disposal of his real estate takes effect, without leaving lawful issue, then the share of the child so dying, shall " go to and be enjoyed" by the survivors and their issue, or their representatives, " *until* the disposal of the real estate."

Now the real estate is disposed of in the 11th article, by giving, on the death of his wife, and the majority of Maria L., life estates to his five children, as tenants in common, with remainder to their issue. It happens, therefore, that the distribution of the personalty, and the division or disposal of the realty, are to take place at the same time, previous to which, the whole income of both estates is given to the children subject to the aforesaid charges. It might, therefore, be a question, whether the shares spoken of in the 12th article, relate to the whole income, or only to the income of the real estate. The latter idea is naturally suggested by the event specified ; viz., " on the death of any of my children before the disposal of my real estate." This introduction is so suggestive of the subject matter of the article, that it is difficult to refrain from limiting the subsequent directions to the real estate alone. It is replied, however, that the words, " before the disposal of my real estate," do not denote the subject of the article, but only the time and contingency on which it is to have effect, and that as the division of the personalty, and the disposal of the realty are to happen at the same moment, it is entirely indifferent in fixing the time, whether the testator marks it by referring to one event or the other. In either event the time is fixed, which is all that was aimed at. I do not think it important, however, to dwell on this question. It was conceded by both sides on the argument, that nothing but *income,* whether of realty, or

both realty and personality, was disposed of by this article. It manifestly only covers interests of children dying before the decease of the widow, which they can "*enjoy in the mean time*," and which are given over in case of death, only "*until*" the period for division arises. Applying only to the intermediate interests in the income, therefore, and not to the principal fund, this article cannot take away the gift of the principal. It is in the nature of a condition subsequent, which it has always been held must precisely happen, and be strictly performed, in order to divest an estate already vested. (*Skey* vs. *Barnes*, 3 *Meriv.*, 335; *Templeman* vs. *Warrington*, 13 *Simon.*, 267.)

It was urged, however, that inasmuch as by the 12th article, the interest of the children in the income was contingent, and would cease on death, and go over to issue, or to the survivors, therefore, the presumption afforded in favor of the principal vesting by the gift of the income, fell to the ground. This argument would be of greater weight if the gift of the income were the only ground for inferring a gift of the chief fund; but as already seen, it forms one of several circumstances looking to that result. But the gift of the income was not contingent,—it was absolute, and vested with a limitation over to issue, &c., on a contingency. (*Parker* vs. *Golding*, 13 *Simon.*, 418; *Kimberly* vs. *Tew*, 4 *Dru & Warren*, 153.) Now what is the consequence of this reasoning? The forecast and wisdom of the testator in looking forward to the possibility of the death of some of his children, leaving issue, before the division of his estate, his prudence in providing for the transmission of such deceased child's income to issue, are brought forward to show that the testator did not intend to vest the principal in his children, and to establish a mere direction to divide on a future contingency. The testator's provision for issue of a deceased child out of the income, is adduced to build up a proposition by which such issue on the death of their parent before the widow, would be wholly cut off from their parent's share in the principal.

A limitation of interest over to issue is urged to show the principal was not vested, when, if not vested, for want of such a limitation, the legacy would lapse, and the issue take nothing. The argument is, I think, all the other way. The very fact that on the death of a child, his issue are to take his share of the income, while no such provision in case of death was made in regard to the principal, is conclusive to my mind that the latter was considered an absolute and vested gift, only postponed in possession, for the convenience of the estate, and which, in the event of death before the period fixed for its division, would pass to the representatives of the legatee, and needed no special direction by the testator to make it transmissible. It is conceded the limitation to issue is confined to the income, and does not touch the principal; and in the language of Sir James Wigram, " I do not understand why the clause of substitution can alter the construction of the will, in a case to which that clause will not apply." The anxiety to limit over the income to issue, and the neglect to do the same with the principal, irresistibly impresses the mind with the conviction, that the absence of such a clause of substitution in the latter case, did not arise from want of prudence or forethought in contemplating the contingency of death, but from the idea that such a provision was requisite as to the income only, while the principal would pass by operation of law to the personal representatives of the legatees. Nor is it clear, that the testator intended to apply the 12th article to the income of the personalty at all. If the shares were vested, the representatives of a deceased child might succeed to the income of the personalty; but on the death of a child, it was necessary, in order to pass the income of the real estate, to make such a special provision; and, I must confess, this seems to me the sole object of the 12th article, and its most natural interpretation, in view of the various provisions of the will.

However this may be, I do not think it substantially affects the prominent features of the case, and in what-

ever light the 12th article is viewed, I cannot consider it as tending to a construction of the will adverse to the idea that the bequests in question are vested. If I am wrong in this, and it is really an important element in determining the testator's intention, its weight, it seems to me, must be greatly magnified to overcome the arguments in favor of holding the legacies vested. After the most careful consideration I can give the case, I see no room to allow any other conclusion.