NEW YORK COUNTY—HON. CHARLES P. DALY, ACTING SURROGATE— October, 1862.

## HAMLIN v. OSGOOD.

*In the Matter of the Distribution of the Estate of* ASHER P. HAMLIN, *deceased.*

The testator devised all his estate to his executors in trust, to sell it in such parcels, and at such times, as they should think proper; and authorized them, until such sales were made, to receive the rents and profits.  He then directed, that upon the converting of all his estate, real and personal, into money, it should be divided into ninety equal parts, specifying how many parts were to be paid to the several legatees.  He also directed that in case of the death of any legatee "before the division of my estate, leaving descendants," the share of such legatee should go to said descendants, in such portions as they would be entitled to, if such deceased person had died intestate, fully possessed of the same.

*Held,* 1. In view of the discretion allowed to be exercised by the executors, the court will not presume that the testator contemplated the division of the whole estate at an earlier period than it really occurred, except where unreasonable delay or an unwarrantable abuse of the trust are shown.

2. The event upon which the bequests were limited, was the final division of the testator's estate; and the legacies did not vest until that event took place.  Therefore, when one of the legatees died before the final division took place, the limitation over to his descendants took effect at his death; and his share should be paid to them, and not to his administrator.

3. The widow of said legatee was not, therefore, entitled to any por-

tion of her husband's share. She is not included in the term "descendants," and can take no part in the distribution as such.

Brothers and sisters cannot take under the term "descendants." The term does not mean next of kin, or heirs at law generally, but it means the issue of the body of the person named of every degree, as children, grandchildren, and great-grandchildren.

The testator, Asher P. Hamlin, died August 11, 1858, and by his will devised and bequeathed all his real and personal estate to his executors, upon trust, to divide the whole proceeds into ninety equal parts; and, among other bequests, to pay and deliver to his niece, Lydia Day, eight of the said ninety equal parts. To his sister, Jerutha Day, ten of the said ninety equal parts. To his nephew, James D. Hamlin, five of the said ninety equal parts. To his grand-nephew, Asher P. Hamlin, Jr., five of the said ninety equal parts. And directed that, "in case any of the persons for whom provision is herein made shall die before me, or before the division of my estate, leaving descendants, such descendants shall have and take such share and portion of my estate as such deceased person would, if he or she had lived, been entitled to,—such portion to be divided among such descendants in such shares as they would be entitled to if such deceased had died intestate, fully possessed of the same."

The said Lydia Day died before the testator, without leaving issue, never having been married, and leaving no parent.

The said Jerutha Day died before the testator, leaving her children Lydia Day (above mentioned), Eliza Crippen, and Lewis Day; and her grandson, William H. Day, the only child of her deceased son Asher.

The said James D. Hamlin died after the testator, leaving him surviving, his widow Lucy Hamlin, and his children Emily B. Osgood, Francis S. Hamlin, and Caroline B. Hamlin.

The said Asher P. Hamlin, Jr., died after the testator, intestate, without leaving issue, he never having been married. He left him surviving, his father, Samuel S. Hamlin, to whom were granted letters of administration upon his estate.

EDWARD DeWITT, *for the Administrator.*

W. L. WORDEN and P. G. CLARKE, *for Emily B. Osgood.*

BIRDSELL & MANCHESTER, *for other Next of Kin.*

THE SURROGATE.—Lydia Day having died before the testator, leaving no descendants, the legacy in her case lapsed. Neither her brother nor sister can take under the term descendants. Descendants does not mean next of kin, or heirs at law generally, as these terms comprehend those as well in the ascending as in the descending line, and collaterals; but it means what the word obviously imports, the issue of the body of the person named, of every degree—as children, grandchildren, and great-grandchildren. (*Crossy* v. *Clare*, *Amb.*, 397; *Le Gard* v. *Haworth*, 1 *East*, 120; 1 *Jarm. on Wills*, 32; 2 *Williams on Ex.*, 811, 812, 2 ed.) Lydia Day, therefore, having died without issue, the contingency contemplated by the testator—her death before him, leaving descendants who should be living at the time of his death—never occurred, and the legacy has consequently lapsed.

The legacy to Jerusha Day, who died before the testator, did not lapse, as she left descendants who were living at the time of his death. They take it in equal portions—the grandchild a third, and the children each one third.

Asher P. Hamlin, Jr., the grand-nephew, survived the testator, and the legacy to him vested at the testator's death. (*Van Wyck* v. *Bloodgood*, 1 *Bradf.*, 154; *Deane* v. *Test*, 9 *Ves.*, 147, 152; *Gaskell* v. *Harman*, 6 *Id.*, 159; 11 *Id.*, 489; 1 *Roper on Leg.*, 553, 555, 601.) He received his proportional part on the first distribution, and died before a final division was made. It is claimed that there was, by the first distribution, a division of the estate within the terms of the will, and that after he had received that proportional, his interest in the whole became absolute, and could not be divested. I do not think so, but think that the testator meant the complete and final division of his estate. But the point is not one that it is material to discuss; for as Asher P. Hamlin, Jr., died unmarried, and left no descendants, the

contingency contemplated by the testator, and which alone could divest the undistributed residue, never occurred, and it consequently goes to his administrators.

James D. Hamlin was living at the time of the testator's death. The legacy to him consequently vested,—subject, however, to its being divested if he died before the division of the testator's estate, leaving descendants. He died before any division was made, leaving descendants, and his share goes to them. The words of the will are: " In case any of the persons for whom provision is herein made, shall die before me or before the division of my estate, leaving descendants, such descendants shall have and take such share and portion of my estate as such deceased person would, if he or she had lived, been entitled to."

Some difficulty has been experienced in construing a provision like this, by which a legacy is given to others, if the legatee should die before a certain event takes place, the time when it will take place being uncertain. The event may be delayed by causes unforeseen by the testator, or by the neglect or misconduct of executor or trustee.

In *Hutchinson* v. *Mannington* (4 *Bro. C. C.*, 291, *note ;* 1 *Ves. Jr.*, 366), the testator left a legacy to be paid out of a fund in India, with the proviso, that if the legatee died before he received it, it should go to others. The legatee died before he received it, and LORD THURLOW was of the opinion that the provision, "before he received it," was too vague and uncertain; and as the testator had neglected to fix any definite time, such as a year (the term given by law for an executor to make payment), he held the legacy to be vested absolutely from the death of the testator. He put the case of similar proviso upon the sale of real estate, and said the court would not inquire when it could or ought to have been sold, but, for the purpose of construing such a provision, would consider it as sold the moment the testator is dead.

This decision, however, has never been followed. LORD ELDON considered it erroneous (*Sitwell* v. *Bernard*, 6 *Ves.*, 520); and the case now is authority for nothing more than

that the intention of the testator, in provisions of this kind, must be manifest and clearly expressed. (*Law* v. *Thompson*, 4 *Russ.*, 92, 100.)

In *Elwin* v. *Elwin* (8 *Ves.*, 547), the executors were directed, upon a certain contingency, to sell the testator's real estate and divide the proceeds among his nephews; but that if any of them should die before "the sale of his estate was completed, that then the share of the nephew so dying was to be otherwise disposed of." One of the nephews died before the sale was completed, and SIR WILLIAM GRANT, Master of the Rolls, held that no interest vested, until the sale was completed, in the nephew. He said: "The testator clearly meant to give the trustee a discretion, which the nature of the trust, a trust to sell, requires. In the first instance, it is left to them to judge how soon. He does not suppose, nor will the court presume, that they will abuse the discretion placed in them; and if they do not, he clearly means that the interest shall vest at the completion of the sale, and not before. It is only in the case of their negligence procrastinating the sale, that such a presumption can be made. . . . The court is desired to presume that he did not mean what he has said, or, at least, did not understand the meaning of what he so anxiously expressed."

In *Law* v. *Thompson* (4 *Russ.*, 92), the testator died in India, leaving to his father, in Ireland, 5000 pagodas, with the proviso, that if his father should die "before the money was paid into his hands," then he gave it to his brother and sister. The father died before receiving the legacy, and it was held to be the intention of the testator, that the gift should vest in the legatee, when actually remitted to him, unless the remittance was delayed through the want of reasonable diligence on the part of the executors.

It may be collected from these cases, that when the testator may fairly be presumed to have contemplated that the event upon which he has limited the bequest would occur within a definite period, and the legatee lives beyond the period, but dies before the event actually takes place, that

the legacy will be vested in him absolutely. But if it may be gathered from the will, that the testator had no definite idea in his mind of the time within which the event would take place, and has clearly expressed his intention that the legacy shall be divested, if the legatee should die before the happening of the event; then the time that may have transpired is immaterial, and if the legatee die before the event occurs, the legacy goes to those to whom it is limited over.

In the present case, the testator devised all his real and personal estate to his executors in trust, to sell and dispose of in such parcels, and at such times, and upon such terms as they should think proper; and authorized them, until such sales were made, to let his lands and tenements, and to receive the rents and profits thereof. Here there was a very large discretion, and one with which the courts would not ininterfere, unless there was an unreasonable delay or an unwarrantable abuse of the trust. He then declared, that upon the converting of all his real and personal estate into money, it should be divided into ninety equal parts, specifying how many parts were to be paid to the several legatees. In connection with the discretion with which he clothed his executors, it is manifest that he contemplated that it might not be possible or judicious to convert his estate at once, and accordingly he made provision that the executors might, in their discretion, from time to time, make payments out of the proceeds of his real and personal estate, among the legatees, on account of their several shares and portions, before a final payment and distribution of his estate. He contemplated, in fact, and authorized, exactly what has taken place—the gradual conversion of his estate, and a distribution of it from time to time, in the discretion of his executors. All this shows very clearly that he had no definite idea of the time within which what he intended should be done, but·that he meant to leave it to the discretion of his executors.

I have nothing before me to show that this discretion was not properly exercised, or that there was unreasonable delay. But one of the executors qualified, and he died in four-

teen months after letters testamentary were granted, without having filed an inventory, and without executing any of the trusts of the will. There was a delay here in not filing an inventory, which must be done in three months after the granting of letters, unless the time is extended by the surrogate. The statute also provides that the general legacies shall be paid after the expiration of a year from the time of granting letters. (3 *Rev. Stat.*, 3 ed., 171, 177, §§ 16, 50.)

In sixteen months after the testator's death the first distribution was made; and in thirteen months after, the administrator with the will annexed, who had also been appointed trustee, rendered his final account, and had it adjusted and settled. Now the whole of this time, two years and nine months from the testator's death, may have been a reasonable period, for all that I know, within which to convert the whole estate, which was a very large one, into money. I cannot indulge in any presumption to the contrary. I cannot, in view of the discretion which the testator allowed to be exercised, presume that he must have contemplated that it would have been done at an earlier period, or before the time when James D. Hamlin died, which was fifteen months after the death of the testator; or presume that he must have contemplated that the whole estate would be ready for division at the end of the year, which the statute fixes as the period within which general legatees are to be paid: and if I cannot presume that the testator contemplated that his estate would be divided before the period when James D. Hamlin died, then I must hold that he died before the event which the testator had in view, and that the limitation over to his descendants took effect. This was the construction put upon this provision in the will by the administrator. The first distribution having been made after James D. Hamlin died, the administrator paid over the proportional part to which he would have been entitled if living, to his descendants; and, in my judgment, he was right in so doing.

James D. Hamlin left a widow and three children, and on the part of the widow it is insisted that if his share is not to

go to his administrator, but to his descendants, she is still, by the express terms of the will, entitled to share with them in the distribution of it, the same as if James D. Hamlin had died, possessed of it, intestate. The will, after providing that if any of the legatees die before the division of the estate, leaving descendants, the share of the legatee shall go to the descendants, declares that it shall " be divided among such descendants, in such shares as they would be entitled to if such deceased person had died intestate, fully possessed of the same." Under the latter provision the widow claims that she is entitled to one-third, the same as if James D. Hamlin had died possessed of this share, intestate. But I cannot assent to any such construction. The intention of the testator is, in my judgment, plain and obvious. The share of James D. Hamlin, in the event of his death before the division of the estate, is given expressly to his descendants, and to nobody else. It is, by the terms of the will, " to be divided amongst" them, and the clause that it is " to be divided amongst such descendants, in such shares as they would be entitled to if such deceased person (James D. Hamlin) had died intestate, fully possessed of the same," means simply equality of division among them; that is, a division *per stirpes*, or such a division as the Statute of Distributions would make among them of their proportional part, in case of intestacy. There is nothing in the language of the testator to indicate any intention that the wife of James D. Hamlin was to have one-third of his share, and his descendants two-thirds. As I have said, they alone are named as those among whom it is to be divided in the event of the contingency contemplated, and she is not embraced under the term " descendants."

In *Nichols* v. *Savage* (cited in 1 *Ves.*, 53), it was held that a gift to next of kin or relations did not include a husband or a wife.

In *Davies* v. *Bailey* (1 *Ves., Sr.*, 84), the testator gave the residuary personal estate to his wife for life, and the capital at her death to " such of his relations" as would be entitled to it by the Statute of Distributions; and it was held by Lord

HARDWICKE that the executor of the wife was not entitled to any share of the principal residue.

In *Worseley* v. *Johnson* (3 *Atk.*, 758), the testator devised certain lands to his wife for life, and at her death directed them to be sold, and the proceeds to be divided among his relations, according to the statute. It was held that the wife's executor was not entitled to any part of the produce of the sale with the next of kin.

Garrick, the actor, after providing by his will for the payment of certain bequests and legacies, disposed of the residue as follows : " And in case, after payment of all the said legacies, bequests, and expenses, there shall remain any surplus money or personal estate, I direct the same to be divided amongst my next of kin, as if I had died intestate." The question was, whether Mrs. Garrick, the widow of the testator, was entitled to a share of the surplus under this last clause; and it was held by LORD ELDON that she was not. (*Garrick* v. *Lord Camden*, 14 *Ves.*, 372.)

These cases are decisive on the point that where a bequest is left to a man's next of kin, relations, or descendants, to be divided among them, as if he had died intestate, his widow is not included, and can take no part in the distribution of it.

This embraces all the questions that have been submitted to me for decision, and a decree must be entered accordingly.