J. BYINGTON SMITH, as Executor, etc., Respondent, v. LOUISA R. EDWARDS, an Infant, etc., et al., Appellants.

The will of E. directed that $30,000 should be ''kept invested'' until his ''youngest grandchild now born, or that may hereafter be born, before the final distribution'' of his estate, should be of age. He directed his executors '' out of the interest and net income of the fund to keep in repair a cemetery lot, and make up any deficiency'' there may be in funds to pay legacies and meet the other provisions '' of the will, and authorized them from time to time after five years'' from his death, ''to make division and distribution of the surplus * * * and also if they see fit at the same time to divide and distribute'' $10,000 of the principal between four children and four grandchildren named; also ''thereafter, from time to time,'' to ''make division and distribution of other interest and increase'' between the beneficiaries named; if either should ''die before payment, leaving issue,'' he directed that ''his or her aforesaid legacies and portion'' should go '' to his or her children;'' if either should die without issue, then that his or her ''legacy and portion'' should go '' to the surviving brothers and sisters.'' When his ''youngest grandchild born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter shall sooner be lawfully married,'' he directed his executors to divide the remaining $20,000 into two equal parts, one to be divided equally between his four children, the other equally between all his grandchildren then living, including those born after his death, with a similar provision in case of a legatee's death as was attached to the $10,000. There was no residuary clause in the will. In an action to obtain a construction of the will, held, that the whole bequest was invalid, because it suspended the absolute ownership for more than two lives in being at the death of the testator, and that as to the $30,000 the deceased died intestate.

The testator gave to his executors $7,000 in trust to be kept invested for the benefit of an insane daughter, the principal to go to her if she should regain her reason before the final settlement of the estate; otherwise, and on her death, the same to '' become a part of the general fund'' in the hands of the executors '' for final distribution.'' The daughter died without having recovered her reason. A surplus not disposed of by the will remained in the hands of the executors; held, that the $7,000 fell into the residue so undisposed of.

The will gave to each and every grandchild of the testator born within twenty years after his death, and before the final settlement of his estate, the sum of $1,000, to be paid to each on reaching full age, or if a granddaughter, upon her marriage. Held, that there was no illegal suspension of the absolute ownership, and that the bequests were valid.

(Argued January 20, 1882; decided February 28, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 16, 1880, which modified, and affirmed as modified, a judgment entered upon a decision of the court on trial at Special Term. (Reported below, 23 Hun, 223.)

This action was brought to obtain a construction of the will of Hervey Edward, late of Fayetteville, Onondaga county, who died November 30, 1868, leaving a large estate, real and personal. There was a residuary fund realized out of the estate not disposed of by the will.

The provisions of the will in question are as follows:

" *Fifth.* I give and bequeath unto my executors in turn for the use, comfort and support of my invalid daughter, Julia P. Edwards (now at the Bloomingdale Asylum) the sum of seven thousand dollars, to be securely invested, earning interest or dividends, and such interest and dividends used, from time to time, as best may be to and promote her comfort and happiness; and should such interest and dividends, at any time, become insufficient for that purpose, my executors add so much more as shall be necessary from the increase and income of any other funds that may be in their hands; and if said Julia P. at any time regain her reason before the final settlement of my estate, I give and bequeath unto her the principal of said sum of seven thousand dollars; otherwise, and on her death, said seven thousand dollars shall become a part of the general fund in the hands of my executors for final distribution."

" *Ninth.* I give and bequeath to each and every grandchild (if any) that may be hereafter born within twenty years after my death, and before the final settlement of my estate, the sum of one thousand dollars; and request that all of my children may consent to and acquiesce in this the same as though such grandchild or children were now born and living, said one thousand dollars to be paid unto each on their severally arriving at full age, or if granddaughters, on their sooner being lawfully married."

" *Sixteenth.* I have thirty thousand dollars invested in United States registered bonds, which I order and direct to

have kept invested until my youngest grandchild, now born, or that may hereafter be born before final distribution of my estate, shall be of full and lawful age; and that my executors, out of the interest and net increase thereof, keep up and in good order and condition, all stones, railings, etc., in and about the Edwards·lot, in the Fayetteville Cemetery, replacing any stone that may be broken, and repairing said railing, etc., as from time to time may become necessary; and that they make up out of said increase and interest any deficiency there may be in funds to pay legacies and meet the other provisions of this will; and may from time to time, after five years from the time of my death, make division and distribution of any surplus·that may then be in their hands; and also, if they see fit, at the same time divide and distribute ten thousand dollars of said principal or bonds thus invested, all between my four children, Thomas C., Marion E., Elizabeth E., and Howard H., and my aforesaid·grandchildren, Alice M., Florence E., Clara E., and Louisa R.; in the proportion of my aforesaid legacies and bequests severally to them; my said daughter Julia P. also to be included in such division, and in the proportion of her aforesaid legacy if she shall before such division become rational; and may thereafter from time to time make division and distribution of other interest and increase between said children and grandchildren, in the same proportion; and if either shall die before payment, leaving issue, then his or her aforesaid legacies, and portion to his or her children; but if either shall die without issue and before payment, then his or her legacy and portion to the surviving brothers and sisters.

And when my youngest grandchild born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter shall sooner be lawfully married, my executors shall divide the remaining twenty thousand dollars (now in such bonds), and such increase as they may then have, into two equal parts, and shall divide one moiety, or half thereof, equally between my four children, Thomas C., Marion E., Elazabeth E., and Howard H., or into five parts, so as to in-clude my daughter Julia P., should she become rational; and

shall divide the other moiety or half equally between all of my grandchildren who may then be living — including such as may be hereafter born ; and if any child or grandchild shall die before such division and distribution, then his or her share to his or her children; but if without issue, then to his or her brothers or sisters; but in all cases the share and portion of any one under age shall be kept invested and on interest until he or she shall arrive at full age, or be as aforesaid lawfully married."

The testator left him surviving the five children and four grandchildren named in the sixteenth clause. The grandchildren were all minors at the time of his death, and one of them was a minor at the time of trial. The testator's daughter, Julia, died insane. After the death of the testator one grandchild was born, who has since died.

*F. A. Williams* for appellant, Louisa R. Edwards. By the third item of the will the legacies vested in the legatees named, upon the death of the testator, and were payable subject to any deductions for advancement to the legatees in due course of administration, *i. e.,* one year after death of testator. (2 R. S. § 43; Edm. ed., p. 92; *Wheeler* v. *Ruthven,* 74 N. Y. 428; *Kerr* v. *Dougherty,* 17 Hun, 341; *Birdsall* v. *Hewlett,* 1 Paige, 32.) By the words "grandchildren now born" and "grandchildren born," the testator means such grandchildren as were then and there living, and *in esse,* and those only. And in this construction the 9th item, fol. 31, assists us. (2 Jarman on Wills [Randolph & Talcot's ed.], pp. 700 and 702, marg. p. 154; *Quinn* v. *Hardenbrook,* 54 N. Y. 83; *Wetmore* v. *Parker,* 52 id. 463; 1 Redfield on Wills, 380.) The words used in the will referring to future born grandchildren refer to and provide for the birth of grandchildren between the time of making the will and death of the testator. (*Storrs* v. *Benbow,* 2 My. & K. 46; *Pergrose* v. *Burnham,* 2 Cox, 384; *Paul* v. *Compton,* 8 Ves. 375; 2 Jarman on Wills, 716, 717, 734, 735; *Whitebread* v. *Lord St. John,* 10 Ves. 152.) While effect should be given to the whole instrument and every part of it, if it can be done without violation

of the rules of law, yet if language is used which cannot be recon-
ciled with the other parts of the will, or imposes an illegal
limitation, it should be rejected as surplusage or as repugnant
to other portions of the will. (*Post* v. *Hover*, 33 N. Y. 593,
601; *Harrison* v. *Harrison*, 36 id. 543, 601; *Patterson* v.
*Ellis*, 11 Wend. 250, 298; *Warner* v. *Durant*, 76 N. Y.
133; *Everitt* v. *Everitt*, 29 id. 40.) The law favors the vest-
ing of estates, and where there is no ground for implying a
trust estate during the interval between the death of the tes-
tator and the time designated in the will for the payment of
each " share," " portion," " legacy," or any suspension
of the power of alienation, the legacy vests at once. (*Mo-
narque* v. *Monarque*, 80 N. Y. 320; *Harrison* v. *Harrison*,
36 id. 543; *S. C.*, 42 Barb. 102; *Post* v. *Hover*, 33 N. Y.
593; *Gillman* v. *Reddington*, 24 id. 9; *Everett* v. *Everett*, 29
id. 39; *Tucker* v. *Bishop*, 16 id. 402; *Manice* v. *Manice*, 43
id. 303; *Patterson* v. *Ellis*, 11 Wend. 259; *Warner* v. *Du-
rant*, 15 Hun, 450.) The provision in the will for the dispo-
sition of the " share," " portion," or " legacy," of either, in
case of death prior to the time designated for payment or dis-
tribution, shows an intent in the mind of the testator that the
whole fund should be considered already divided as devised.
(*Harrison* v. *Harrison*, 36 N. Y. 545; *Mesrole* v. *Mesrole*,
3 N. Y. Sup. Ct. [T. & C.] 192; *Monarque* v. *Monarque*, 80
N.Y. 320; *Bingham* v. *Jones*, 12 Week. Dig. 406.) The limi-
tation over to the brothers and sisters or issue, as the case may
be, is good. (*Everitt* v. *Everitt*, 29 N. Y. 75, 77, 78; *Gilman*
v. *Reddington*, 26 id. 9, 13, 16.) The grandchildren *in esse*
took vested interests in the fund of $30,000, subject to open
or shift and let in after-born grandchildren. (*Monarque* v.
*Monarque*, 80 N. Y. 320; *Savage* v. *Burnham*, 17 id. 561;
*Harrison* v. *Harrison*, 42 Barb. 162; affirmed, 36 N. Y. 543;
*Everitt* v. *Everitt*, 29 id. 39; *Tucker* v. *Bishop*, 16 id. 402.)
It is no objection that the limitations, as well those which
are good as those which are bad, should any of the limitations
be held to be bad, are embraced in a single bequest. (*Kivern*
v. *Williams*, 5 Sim. 171; *Leake* v. *Robinson*, 2 Meriv. 293;

*Sidney* v. *Vaughan*, 2 B. P. C. Toml. 254; *Chaffers* v. *Abell*, 3 Juris. 577; 2 Jarman on Wills, 454; *Bingham* v. *Jones*, 12 Week. Dig. 406; *Burke* v. *Valentine*, 5 Abb. Pr. [N. S.] 165.) In the construction of wills, words and clauses, or even whole paragraphs, may be transposed to any extent to show the intention of the testator. (*Pond* v. *Bergh*, 10 Paige, 152; 1 Redfield on Wills, 430; *Pond* v. *Bergh*, 10 Paige, 140, 152; *Rathbone* v. *Dyckman*, 3 id. 9.)

*N. B. Smith* for appellant, Florence Garrison. A legacy, though payable at a future time, vests at the death of the testator, unless a contrary intent is clearly manifested. (*Barker* v. *Wood*, 1 Sandf. Ch. 130; *Everitt* v. *Everitt*, 59 N. Y. 39; *Bedell* v. *Guyson*, 12 Hun, 396.) The law favors the vesting of estates and the authorities agree in treating future interests as vested where there is any present vested interest in the income of the property. (1 Jarman on Wills, 799; *Dale* v. *White*, 33 Conn. 294.) It matters not that the estate given is to be set apart or payment made to the donee at a future time. (*Higgins* v. *Waller*, 27 Ala. 399; *Evans* v. *Harris*, 5 Bev. 45; *Gilman* v. *Severns*, 1 B. C. C. 582; *Maddison* v. *Andrews*, 1 Ves. 58; *Mills* v. *Norris*, 5 id. 335; 2 Jarman on Wills, 157 [5th Am. ed.].) In construing wills the words " at and upon the death of," " when and as soon as," and similar words, have uniformly been held to indicate the time when the legacy shall take effect in possession, and not to make a contingency. The same effect should also be given to the words " then and when." (*Roebuck* v. *Dean*, 2 Ves. 265; *Livingstone* v. *Green*, 52 N. Y. 118; *Clancy* v. *O'Gara*, 4 Abb. N. C. 268; *Warner* v. *Durant*, 15 Hun, 480.) The specific directions for the distribution of the $30,000 indicate the purpose of the testator to make bequests of the principal sum and to vest the legacies. (*Van Wyck* v. *Bloodgood*, 1 Bradf. 174; *Everitt* v. *Everitt*, 29 N. Y. 75.) The power of alienation is not unlawfully suspended by this provision of the will, because the law permits bequest to unborn children, and the postponement of the time of payment during their minorities. (*Collin* v. *Collin*, 1 Barb. Ch.

630; *Leed* v. *Morton*, 60 N. Y. 506; *Hughes* v. *Hughes*, 3 B. C. C. 552, 434; *Mogg* v. *Mogg*, 1 Mer. 654, 658; *Gooch* v. *Gooch*, 14 Bev. 565; *Simpson* v. *Cook*, 24 Minn. 180; *Dubois* v. *Ray*, 35 N. Y. 162; *Manice* v. *Manice*, 43 id. 303, 376; *James* v. *Beasly*, 14 Hun, 520.) When interest or income is appropriated for the benefit of a legatee, in the interval between the death of the testator and the period of payment, the words of futurity refer to the possession only and the gift amounts in substance to a vested legacy. (*Hanson* v. *Graham*, 6 Ves. 239; *Fuller* v. *Winthrop*, 3 Allen, 51, 60; *Lane* v. *Goudge*, 9 Ves. 225; *Berkley* v. *Swinburne*, 16 Sim. 275; *Barnet* v. *Barnet*, 29 Beav. 239; *Taylor* v. *Frobisher*, 5 D. G. S. 191; *Lester* v. *Bradley*, 1 Hare, 10; *Fonnereau* v. *Fonnereau*, 3 Atk. 645; *Parker* v. *Goulding*, 13 Sim. 418.) If the direction to postpone final distribution in order to let in afterborn grandchildren should be adjudged invalid, that provision may be rejected and the validity of bequests to grandchildren *in esse* will not be affected. (*Williams* v. *Williams*, 8 N. Y. 538; *Darling* v. *Rogers*, 32 Wend. 438, *Kane* v. *Gott*, 24 id. 666; *DeKay* v. *Irving*, 5 Denio, 646; *Storrs* v. *Benbow*, 3 D. M. & G. 390; *Kevern* v. *Williams*, 5 Sim. 171; *Kimball* v. *Crocker*, 53 Me. 263.) Under the rule as to devises and bequests to children "to be born," "to be begotten," and to be born at a particular time, the clause in controversy contains a valid bequest and should be sustained. (2 Jarman on Wills, 179, 185; 36 N. Y. 543; 43 id. 303; 7 Paige, 521; 16 N. Y. 402.)

*Edward Wells* for plaintiff, respondent. By the death of Julia P. Edwards insane, the $7,000 bequeathed to the executors, in the fifth item of the will, for her support, sank into and became a part of the unbequeathed residue, called by the testator the "general fund," and is distributable to the next of kin under the statute. (*King* v. *Strong*, 9 Paige, 94; Laws of 1840, chap. 318, § 4; 2 R. S. 138, § 59, [4th ed.]) The bequest of $1,000 (in the ninth item of the will), to any grandchild that might be born within twenty years after the testator's

death, and before the final settlement of his estate, is valid; and on the birth of one, the legacy vested in such child. (1 R. S. 773, §§ 1, 2; *Savage* v. *Burnham*, 17 N. Y. 570–1; Preston on Legacies, 193–4; *Beale* v. *Beale*, 1 P. Wms. 244, 246; *Steadfast* v. *Nicoll*, 3 Johns. Cas. 18; *Jackson* v. *Brown*, 13 Wend. 437; 2 Redfield on Wills, chap. 1, § 2, p. 12; *Hall* v. *Hancock*, 15 Pick. 255; *Mason* v. *Jones*, 2 Barb. 252; 1 R. S. 725, § 30; *Barnes* v. *Allen*, 1 Brown's C. C. 181 [167, Pick. ed.], and note *b*, p. 182; *Lister* v. *Bradley*, 1 Hare, 10; *Clapp* v. *Stoughton*, 10 Pick. 463; *Ferson* v. *Dodge*, 23 id. 287; *Marsh* v. *Wheeler*, 2 Edw. Ch. 161–2; 2 Fonb. Eq. 370 and note *k;* 2 R. S. 97, § 75, sub. 7; *Boone* v. *Sinkler*, 1 Bay [So. Car.], 369; *S. C.*, 1 Am. Dec. 622.) The bequest of the $30,000 fund was void as it unduly suspended the power of alienation. (1 R. S. 773, §§ 3 and 4; 1 Roper on Legacies, 566; 1 Jarman on Wills, 762 [marg.]; *Leake* v. *Robinson*, 2 Meriv. 363, 388; *Dodd* v. *Wake*, 8 Sim. 615; *Boughton* v. *James*, 1 Collyer's Ch. Cas. 26; 2 Redfield on Wills, 247, § 54 [2d ed.], 1870; *Paterson* v. *Ellis*, 11 Wend. 259; *Andrew* v. *N. Y. Bible Soc.*, 4 Sandf. S. C. 156; *Knox* v. *Jones*, 47 N. Y. 389, 397–8.)

*W. G. Tracy* for respondents, H. Howard Edwards *et al.* The alienation of the whole of the $30,000 fund was suspended beyond two lives in being, because no part of the same could vest until the expiration of five years from the death of the testator. (2 Williams on Executors, 1232, 7th ed.; 1 Jarman on Wills, 845, 5th ed.; 2 Williams on Executors, 1233, 7th ed.) The clause also violates the statute, because it directs the accumulation of the income for the benefit of adult children. (*Knox* v. *Jones*, 47 N. Y. 389.) The alienation of the last $10,100 of this fund mentioned in this clause was suspended beyond two lives in being, because it did not become vested until the expiration of the minority of the youngest grandchild born within twenty years after the death of the testator. (*Everitt* v. *Everitt*, 29 N. Y. 39; *Knox* v. *Jones*, 47 id. 389, 398; 3 Williams on Executors, 1250, [7th ed.]; 1 Jarman on

Wills [5th ed.], 227, 840 ; *Jenkins* v. *Fryer*, 4 Paige, 47 ; *Fox* v. *Porter*, 6 Sim. 485; *Newman* v. *Newman*, 8 L. J. [N. S.] 354.) When there is nothing in the context of a will from which it is apparent that the testator has used the words in which he has expressed himself in any other than their strict and primary sense, and when his words, so interpreted, are sensible, with reference to their extrinsic circumstances, it is an inflexible rule of construction that the words of the will shall be interpreted in their strict and primary sense. (Wigram on Wills, 2d Prop., p. 55 ; *Howe* v. *Van Shaaick*, 3 Cow. 538.)

FINCH, J. Three clauses of the testator's will are submitted for our construction. Two of them may be better understood and explained if we first dispose of the graver and more difficult questions which arise out of the sixteenth clause. That begins with a statement that the testator has $30,000 invested in United States registered bonds. He does not give this fund expressly to his executors, but, assuming that it will come to their hands as such, he directs that they keep it invested until his youngest grandchild, "now born, or that may hereafter be born," before "final distribution" of his estate, shall be of full and lawful age. The date of that final distribution is afterward designated, and all through the provisions relating to this special fund is evidently kept in mind. The testator then disposes of the "increase and interest" of the fund during the first five years following his decease. He authorizes his executors to divert so much of it as may be necessary to the care and protection of a cemetery lot, and to supply any deficiency "there may be in funds to pay legacies," or meet other provisions of his will ; and assuming that there will still be left a surplus of interest at the end of such five years, authorizes his executors to "make division and distribution" of such surplus, and also, "if they see fit," of $10,000 of the principal, between his four children, Thomas, Marion, Elizabeth and Howard, and his four grandchildren, Alice, Florence, Clara and Louisa, "in the proportion of my aforesaid legacies and bequests severally to

them." A provision for another daughter, if she should recover from insanity, is unimportant by reason of her death without having become rational. The testator then provides for the further " interest and increase " of the fund which may accrue while awaiting the period of final distribution, and authorizes his executors " from time to time " to divide and distribute it between " said children and grandchildren, in the same proportion." The possibility of their death is then considered, and provision is made that if either shall die " before payment," leaving issue, then his or her " aforesaid legacies and portion " shall go to such issue; but if either shall die without issue and " before payment," then his or her " legacy and portion " shall go to the surviving brothers and sisters. The remaining $20,000 of the principal of the fund the executors are directed to divide into two equal parts when testator's " youngest grandchild, born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter, shall sooner be lawfully married." One of these moieties, being $10,000 of the remaining principal, is directed to be distributed in equal shares to the four children specifically named, all of whom were *in esse* at the date of testator's will, and of his death. The other moiety is ordered to be divided equally among all of the testator's grandchildren, including those born after his death, who should " be living " at the designated period of final distribution; and the same provision follows, carrying the gift, in case of a legatee's death, to issue, or in default of issue, to brothers and sisters, as attached to the $10,000 first to be divided. The disposition of the special fund closes with this further direction, " but in all cases the share and portion of any one under age shall be kept invested and on interest until he or she shall arrive at full age, or be, as aforesaid, lawfully married."

The General Term, reversing the conclusions of the trial court, held this whole bequest invalid; and that, as to the $30,000, the deceased died intestate. This result was reached upon the ground of an unlawful suspension of the absolute

ownership, and an illegal direction for the accumulation of interest and income.

The absolute ownership is suspended in one of two ways: either by the creation of future estates vesting upon the occurrence of some future and contingent event, or by the creation of a trust which vests the estate in trustees. (*Everitt* v. *Everitt*, 29 N. Y. 71.) In both ways, it is argued, this will offends. If, by its terms, a trust estate is in fact created, the result asserted is inevitable; for such trust estate would run for a fixed period of time which might exceed the limit of two lives· in being at its creation; and is not bounded by the continuance of lives at all. ·(1 R. S. 773, § 1.) But such a trust estate is not created by direct words in this will; the special fund is not expressly given to the executors, nor are they described as trustees, or their duties denominated a trust. If this were otherwise, the question in the end to be decided would remain the same, for the trust thus attempted to be created would be illegal, and could have no force or effect. One of two consequences would follow: either intestacy as to the special fund, or, if the language of the bequest permitted, its direct vesting in the legatees for whom it was intended. That became an ultimate question in *Everitt* v. *Everitt* (*supra*), although there the fund in question was expressly and in terms given to the executors in trust. The court held that it was an attempt to create an illegal trust, which must, therefore, be expunged from the will, leaving open only the question whether intestacy followed, or whether the bequest could be sustained as vested in the legatees.

While, in the present case, no trust was created in direct words by the language of the will, it must be conceded that its provisions plainly permit such a construction; but that is not to be adopted where the trust raised from the general language and apparent intention would be invalid, for there is no such anomaly in the law as a trust raised by construction only to be destroyed in the moment of its creation. While, in the present case, a trust estate in the executors would be convenient, it is not essential, and every duty imposed by the will which re-

lates to the special fund may as well be performed by the executors as donees of a power, without in any manner taking a trust estate. (*Everitt* v. *Everitt, supra.*) We may, therefore, dismiss any supposed difficulty growing out of an attempt by the testator to vest a trust estate in the executors, and go at once to the only material question, whether the will created future estates in the children and grandchildren, not measured by lives in being, or whether as to the whole or any part of the special fund here bequeathed, it vested at the death of the testator, the time of payment only being postponed.

In dealing with this question we must also concede to the appellants the advantage of their contention that the legatees took distributively — as tenants in common and not as joint tenants. (1 R. S. 727, § 44; *Everitt* v. *Everitt, supra ; Tucker* v. *Bishop,* 16 N. Y. 402.) The testator's purpose in that respect appears plain from the phrasing of his will. He speaks repeatedly of the "share" or "portion" of each. He defines specifically what that share or portion shall be, as regulated and measured in its proportions by the amount of legacies previously bequeathed to the same persons. In case of the death of any one, he gives "his or her aforesaid legacies and portion to his or her children," and provides that "the share and portion of any one under age" shall be kept invested. We are, therefore, to deal with the share of each separately and by itself, and determine simply whether it is proper and lawful to say that such right vested in the legatee upon the death of the testator.

It has been often held, that if futurity is annexed to the substance of the gift, the vesting is suspended; but where the gift is absolute and the time of payment only is postponed, the gift is not suspended but vests at once. Critically examined, this is little more than stating the same problem in another form of words, and amounts practically to saying that if the gift is future, it is not present; but nevertheless it has been useful in drawing sharply the distinction between a gift presently given, and its deferred payment. (1 Jarman on Wills, 759; *Warner* v. *Durant,* 76 N. Y. 136.) Out of that distinction has grown a rule which bears directly upon the present case, that where

the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift. (1 Jarman on Wills, 762.) The cases cited as holding this doctrine were instances in which the gift was conditioned upon an event to be determined in the future. (*Leake* v. *Robinson*, 2 Mer. 363; *Ford* v. *Rawlins*, 1 Sim. & Stu. 328; *Taylor* v. *Bacon*, 8 Sim. 100.) In such cases, until the happening of the future event, it must necessarily remain uncertain whether a gift would exist at all, and that could not be said to have vested which was not certainly given. So far the rule is undoubtedly established, and rests upon evident and sound reasons. It is decisive as to that portion of the bequest of the special fund which the testator directed should be paid at the period of final distribution to his grandchildren who should be living at that date. The condition of survival attached to the gift itself: who the legatees would in fact prove to be, depended upon a future contingency. Those who were to take in the prescribed event were uncertain until it happened; might not be any one of those *in esse* at testator's death, and might prove to be a grandchild born twenty years later. The ultimate vesting of this portion of the principal of the special fund was, therefore, plainly postponed for twenty years, and not during designated lives in being, and must be declared invalid. (*Schettler* v. *Smith*, 41 N. Y. 334.)

Its failure does not necessarily draw with it the portion of the bequest given to the four children and four grandchildren named and who were *in esse* at the date of testator's death. It does destroy so much of it as consisted of the accruing interest upon the portion which failed, but the principal of $20,000 and the interest upon that as bequeathed to the eight legatees are not so interwoven with the testator's general scheme as to be incapable of separation. In *Van Vechten* v. *Van Veghten* (8 Paige, 128), the learned chancellor said, that "in trusts of personal estate, or of money which is infinitely divisible in its nature, a suspension of the absolute ownership as to one part of the fund for a longer period than is allowed by

law will not make void the disposition which has been made of another part thereof." Here the bequests to the named and certain legatees are in no respect dependent upon or interwoven with the void bequest to unknown grandchildren. The two provisions are not enveloped in a single trust, for there is no trust created at all, but merely a power which may be executed so far as it is valid, and so we are brought to consider, separately and by themselves, the bequests to the certain and specific legatees.

These legacies depend upon no condition or contingency. The legatees are to take, or their issue or survivors, as holders of substituted estates, in any event, and no uncertainty of ultimate vesting attaches to the substance of the gift. But time does so attach and the vesting is future, within the broad terms of the general rule to which we have referred. If that rule is arbitrary and inflexible it ends any further argument; for, in the present case, there was no immediate gift, made in distinct terms, separate and apart from the direction to divide and distribute. But while we have recognized the rule, it has been with very important qualifications and exceptions which properly limit its force as a standard of construction. In *Manice* v. *Manice* (43 N. Y. 369), it was said, that where the terms of a bequest *import* a gift, and *also* a direction to pay at a subsequent time, the legacy vests, and will not lapse by the death of the legatee before the time of payment has expired. And in *Warner* v. *Durant* (*supra*), the general rule is declared to have an exception grafted upon it, that where the gift is to be severed *instanter* from the general estate for the benefit of the legatee, and in the meantime the interest is to be paid to him, that is indicative of the intent of the testator that the legatee shall at all events have the principal, and is to wait only for the payment until the day fixed. The doctrine of these cases confines the rule within the limitation of its precise terms. It applies only where, beyond the direction for future distribution, there are no words and no provisions which import a present or vested gift, or indicate such an intent. It does not control where the language of the will, while not ex-

pressly saying "I give and bequeath," does yet plainly import
a present gift intended to vest immediately, without reference
to the clause of distribution. Thus limited and understood,
the rule is useful to aid in a construction drawn from the tenor
of the whole will, and leaves full force to the intention of the
testator, derived not merely from one feature of his disposi-
tion, but from all his language, and the entire scope of his
testamentary scheme. This flexible rather than rigid construc-
tion of the rule was approved after a full consideration of all
the cases in *Leeming* v. *Sherratt* (2 Hare, 14), and the circum-
stances that the gift of the residue was future, and that there
was no gift of such residue except in the direction for pay-
ment, were held proper to be considered, but "certainly not
conclusive." The way is open, therefore, to explore the terms
and conditions of the will before us, outside of the provision
for final distribution, and to ascertain whether such terms do
import a present gift, irrespective of the direction for pay-
ment.

The appellants rely largely upon the provisions for the dis-
tribution of the interest to the named legatees, and seek to
bring the case within the exception stated in *Warner* v. *Du-*
*rant.* That exception appears to be founded upon the idea
that the gift of interest, *eo nomine,* is difficult to be reconciled
with a suspension of the vesting, because interest is a premium
or compensation for the forbearance of principal to which it
supposes a title. (1 Jarman on Wills, 764.) It is a very
plain inference from this assigned reason of the exception that
it can only apply where the whole interest is given during the
delay of payment. If any part of it is diverted to purposes
other than the benefit of the legatees, that is treating the princi-
pal as not belonging to them, but remaining in the estate as a
source of income for the benefit of the estate; and so the au-
thorities decide. (*Leake* v. *Robinson, supra; Hanson* v. *Gra-*
*ham,* 6 Ves. 239; *Watson* v. *Hayes,* 5 Myl. & Cr. 125; *War-*
*ner* v. *Durant, supra.*) In the present case the whole interest
is not given. Some part of it, and that first accruing, is diver-
ted to the purposes of the estate, and what is given is only

through a permitted discretion of the executors prior to the period of final distribution. The disposition of the interest thus made cannot safely be said to import an intention to vest the gift of the principal at the date of the testator's death.

Our attention is further directed to the language of the will as it respects the substituted estates to arise in case of a legatee's death before the period of final distribution. It is their "share" and "portion" which is carried over to issue or survivors, and their "legacies" which are to be kept invested. The argument is that the testator was, at this point, dealing with an event to occur before the period of final distribution, and his language implies that at such earlier date a share or portion had already been given to the original legatees, which identical interest the will gives in case of the death of any, first to issue, and next, to survivors as substituted estates. Some color is given to this reasoning by a criticism of Jarman upon a decision of the master of the rolls. He argues that where on a given event the "shares" of persons before named shall go in a certain manner there seems ground to infer that, in the alternative event, the property is to be retained by the legatees, and that the case is stronger where there are cross executory gifts and so no "shares" upon which the clause would operate if the vesting was postponed. (1 Jarman on Wills, 773.) The case thus criticized was that of *Vawdry* v. *Geddes* (1 Russ. & Mylne, 203) where it was held that although the bequest of interim interest raises a presumption of an immediate gift intended, yet that presumption fails entirely when the testator has expressly given the legacy over, in the event of the death of the legatee before a particular period. That would seem to be the correct conclusion. If the testator in such case intended and understood an immediate gift vesting at his death, the legacy would go by operation of law upon the decease of such legatee to issue and survivors as next of kin. A clause of substitution, aiming at precisely that result, would be unnecessary and superfluous; and only important where the vesting was intended to be postponed, and for that reason a lapse of the legacies given was to be prevented. Strong support to an in-

ference of this character is given in later cases. (*Leeming* v. *Sherratt, supra; Van Wyck* v. *Bloodgood,* 1 Bradf. 173.)   It is evident also that the use of the words "shares" and "portions" are equivocal, and may indicate, in a provision like that under consideration, either a vested estate in the original legatee, to be divested in case of his death before payment in favor of issue or survivors, or may mean a future estate to vest in case of the legatee's death in the issue or survivors as substituted legatees at the deferred period.   The testator may have used the word "shares" as meaning immediate gifts to each, or simply as descriptive of the "portions" to be given at the period of final distribution.   It seems to us imprudent to found a decisive construction in a case like the present, upon the words referred to.   And that is more certainly so, when we take note of the further fact, that the same word "share" is used in the same connection in the bequest to the grandchildren who should be living at the period of final distribution.   Since in that case there was certainly no immediate or vested gift to the grandchildren *in esse,* the testator must have intended the phrase "share" of one dying before distribution to mean the ultimate amount allotted to that one at the deferred period.   And while a devise over, in a case of real estate, often furnishes an argument in favor of an immediate vesting in the primary devisee, the rules as to bequests of personal estate are not identical and had a different origin.   (*Doe* v. *Moore,* 14 East, 604.)

We have thus explored the will in vain for any safe and adequate ground which would take the bequests to the named legatees out of the operation of the general rule.   The difficulty is that there is no present gift to them, and no language or provision from which such immediate gift can be properly inferred.   The bequest to them lies wholly in the direction for future division and distribution, and can be fairly derived from that clause alone.   In the whole of the clause under consideration the postponement of the legacies for a period which may reach forty years appears plainly to be intended, and is always kept in view.   We cannot read the words "that may hereafter be born" and "that may within twenty years be born" as

referring only to the birth of grandchildren between the making of the will and the death of the testator. They plainly refer to a period after his death, and the will speaks from that date. While we are to encourage always a construction which leans to the vesting of legacies, and seek diligently for evidences of such purpose and intention, we must still construe the will, and not make it over to suit our own notions of what might have been wisest. We concur, therefore, in the conclusion of the General Term that the whole bequest contained in the sixteenth clause was invalid, and intestacy resulted as to the thirty thousand dollars.

The remaining questions in the case may be more briefly considered.

By the fifth clause of his will, the testator gave to his executors the sum of seven thousand dollars in trust, to be kept invested for the benefit of an invalid daughter, the principal to go to her if she should regain her reason before the final settlement of the estate; otherwise, and on her death, such principal to " become a part of the general fund," in the hands of the executors " for final distribution." The will contains no residuary devise or bequest, but a surplus not disposed of by the will, remains in the hands of the executors for final distribution. The question here raised grows out of the death of Julia, without having become entitled to the principal of her legacy, and is, whether the seven thousand dollars falls into the general surplus and residue in the hands of the executors, or into the fund of thirty thousand dollars, the character and disposition of which we have already discussed. We think the latter was a special fund, distinctly separated from the body of the estate, and in no proper sense answered the description of a general fund in the hands of the executors for final distribution; but under our present ruling, it becomes itself part of the general surplus. The General Term correctly held that the seven thousand dollars fell into the residue undisposed of by the will.

By the ninth clause of his will, the testator gave to each and every grandchild born within twenty years after his death and

before the final settlement of his estate the sum of one thousand dollars, to be paid to each on reaching full age, or if grand-daughters upon their earlier marriage. The bequest is accompanied by a request that his children consent to and acquiesce in the provision. The General Term held these legacies to be present gifts of separate and distinct portions of the testator's property, and that all must necessarily take effect completely within the period of one life in being at the death of the testator. We concur in the conclusion. The legacy vested in each grandchild immediately upon its birth, payment only being postponed until majority or marriage. The child of a daughter must necessarily take during the life of its mother, and that of a son, if born after his decease, is still regarded as living at the death of its father for the purpose of the vesting of the legacy. There was, therefore, no illegal suspension of the absolute ownership.

The question as to the right of Wisner as receiver of Thomas Edwards is not before us. No appeal was taken by him from the judgment of the General Term, and the parties who have appealed acquiesce in the disposition there made of the question.

The judgment of the General Term should be affirmed, with costs of all parties to be paid out of the estate.

All concur, except TRACY, J., absent.

Judgment affirmed.