NEW YORK COUNTY.—HON. RASTUS S. RANSOM, SURROGATE.—June, 1889.

### MATTER OF JOHNSON.

*In the matter of the application for the revocation of the probate of the will of ROSA JOHNSON, deceased.*

Testatrix's will was drawn up under direction of one of her sons, who was one of the executors, and who was present at its execution, and whose family was favored in the will. No provision was made for the children of a deceased son, for whom she had promised to provide. In the main, the will was framed in accordance with what under the circumstances, was a scheme for an equitable distribution of the estate.

A will containing substantially the same provisions had been drawn up a short time before and both papers were read to the decedent, who expressed her satisfaction in respect thereto. The reason why the will was re-drafted was to avoid some mistakes in the name of the son, the executor already referred to, and his wife, and to remove an ambiguity in reference to the cause of a special bequest to the son's daughter.

Another son of the testatrix, who was also an executor, was not notified of the changes in the will. Shortly before her death, the testatrix had given to her son, the executor, certain sums of money, the receipt of which he denied under oath. The son testified that his mother had read the will, while it was proved that she had had it read and could read nothing but her own name in English. *Held,* that these facts were not sufficient to justify the finding that the will was procured by undue influence of the son.

A bequest of money in trust to the executors to be kept invested for thirty years after the death of the testatrix, the interest to be applied to keeping the grave of the testatrix in good order, and at the end of that time, the principal to be paid to a legatee, or in case of her death, to be divided in accordance with a specified paragraph of the will, is void, there being no defined beneficiary of the trust.

APPLICATION for the revocation of the probate of a will.

The facts appear in the opinion of the Surrogate.

MILTON S. GUITERMAN, *for petitioner.*

JAMES P. NIEMAN, *for* SAMUEL JOHNSON, *executor.*

WILLIAM P. GAINOR, *for* JOSEPH M. JOHNSON, *executor*

L. A. FULLER, *special guardian.*

THE SURROGATE.—The circumstances attending the preparation and execution of the will of decedent, as disclosed by the evidence, fully warranted the special guardian in filing his petition for the revocation of probate, that a searching inquiry into the facts connected therewith might be had.   No provision is made for the children of a deceased son, who are represented by the special guardian, though within three months she had stated to their mother that she " would look after them, and was sorry that she had not done more for them."   One daughter of another son, Joseph M. Johnson, who was also one of the executors, is given a special legacy of $1,000, and another daughter is given $500, on the termination of the trust created for another's use, the validity of which is put in issue.   With those exceptions, the will is framed in accordance with a scheme for an equitable distribution of the estate, though the shares of two of the sons are given to their wives.

The proofs show that the decedent was of sound mind and memory, and that the requirements of the statute were substantially complied with in respect to the execution of the instrument.   It was prepared under the direction of Joseph M. Johnson, by a lawyer who was a stranger to the decedent, and without a personal interview with her, and Joseph M. was present at the execution.   Samuel Johnson, another son, who is also named as an executor and is a lawyer,

had taken memoranda for a will three months before, but he states that he did not prepare one, though his sister, Mrs. Newman, supposed that he was the draftsman of such a will and of another which was executed a few weeks before the one under consideration, and containing the same dispository provisions.

Within five weeks of the decedent's death $1,900 out of $2,000 which she had deposited in the Kings County Savings Bank, was taken out on three drafts. The last was for $1,000, and was dated December 17, 1887, and was drawn to the order of Joseph M. Johnson, to whom the officer of the bank states it was paid. She also had an account in the North River Savings Bank in this city, and two sums of $70 and $150 were drawn January 16, 1888, and another of $75 was drawn on January 18th. Each of the drafts was drawn in the handwriting of Joseph M. Johnson. On the day following the last draft she died.

The testimony of Joseph M. Johnson, who was called by the special guardian, is unworthy of belief in matters where his interest is involved. He testified that he had not received the $1,000 from the Kings County Savings Bank on December 17, 1887, in which statement he was flatly contradicted by the officer of the bank. He also testified that the decedent read the will when he presented it to her, though the testimony of his sisters, who were interested in having the will sustained, shows positively her inability to read English, except her name. He confessed that he was a bankrupt in means, and that for this reason his wife was made a legatee and devisee of a share of the estate which otherwise would have gone to him.

As the subscribing witnesses were not informed of the contents of the will, the agency which Joseph had in its procurement, and the manner in which his children are favored by its provisions; the fact that it was redrawn without the knowledge of his brother and co-executor, Samuel; the fair inference that he had influenced the decedent to make him a gift of $1,000, if not other sums, during the last few weeks of her life; the disinheritance of grandchildren for whom she had expressed affection; and, further an erroneous statement in the instrument of the occasion of this special bequest of $1,000 to Joseph's daughter, would lead to grave doubts of the will being the decedent's free act and deed, and raises a suspicion that it was procured by the undue influence of Joseph, exerted at a period near his mother's death, when she was weak from a protracted illness.

But the testimony of Mrs. Newman, her daughter, with whom the decedent had lived since the death of her husband, and that of her son Samuel Johnson, shows that the will in question made the same disposition of her estate as the previous instrument; and Mrs. Newman testified that she read both papers to the decedent, who expressed her satisfaction in respect thereto. The reason given for its being fully redrafted was because the middle name of Joseph Johnson was omitted and the name of his wife, who was made a legatee, was spelled wrongly, and that the decedent wished to have some ambiguity removed in respect to the cause of the special bequest of $1,000 to Joseph's daughter. These unimportant changes may have been suggested by Joseph under the belief

that he was subserving the interest of himself and his family. I think that they were. That the grandchildren were disinherited affords no ground for revocation of the probate of the will. If Mrs. Newman is to be believed, the instrument reflects the decedent's testamentary wishes. The contestants have not made out such a case as to lead me to discredit her statement.

The fourth clause is as follows: " I hereby give and bequeath to my said executors, or such of them as shall qualify and take upon themselves the execution of this my will, and the survivor of them and their successor or successors, the sum of $500 in trust, to be kept securely invested by them for the period of thirty years, after my death, and the interest and income of such sum to be applied for the purpose of keeping my grave and burial plot in good state and condition, and at the end and expiration of said period of thirty years, the said principal sum of $500 shall be paid to my granddaughter Gussie Johnson, daughter of my son Joseph M. Johnson, for her own use and benefit, and in case of the death of said Gussie Johnson before the expiration of said period, the principal sum shall at the expiration of said period be divided among the same persons and in the same manner as my other property, as specified in paragraph nine of this will."

It is contended by the special guardian that this trust is void, and that as to the sum therein mentioned, she died intestate.

In the case of Smith v. Edwards, 88 *N. Y.* 92, the will of the testator directed, by the sixteenth clause as follows: " I have $30,000 invested in United States

registered bonds which I order and direct to have kept invested until my youngest grandchild, now born, or that may hereafter be born before final distribution of my estate, shall be of full and lawful age; and that my executors out of the interest and net increase thereof, keep up and in good order and condition all stones, railings, etc., in and about the Edwards' lot in the Fayetteville Cemetery; . . . . and that they make up out of said increase and interest any deficiency there may be in funds to pay legacies and meet the other provisions of this will; and may from time to time, after five years from the time of my death, make division and distribution of any surplus that may then be in their hands; and also, if they see fit, at the same time divide and distribute $10,000 of said principal of bonds thus invested, all between my four children . . . . . in the proportion of my aforesaid legacies and bequests severally to them . . . . . and may hereafter from time to time make division and distribution of other interest and increase between said children and grandchildren, in the same proportion; and if either shall die before payment, leaving issue, then his or her aforesaid legacies and portion to his or her children. . . . . And when my youngest grandchild born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter shall sooner be lawfully married, my executors shall divide the remaining $20,000 (now in such bonds), and such increase as they may then have, into two equal parts, and shall divide one moiety or part thereof equally between my four children . . . . . and shall divide the other moiety or half equally between all of my grand-

children who may then be living, including such as may hereafter be born. . . . ."

The court held that the whole bequest was invalid,. because it suspended the absolute ownership for more than two lives in being at the death of the testator, and that as to the $30,000 the deceased died intestate. Also, see Holland v. Alcock, 108 *N. Y.* 312.

There is no beneficiary in existence who is interested in or can demand the execution of the trust, and as in Holland v. Alcock (*supra*) the absence of a defined beneficiary is, as a general rule, a fatal objection to any attempt to create a valid trust.

I therefore hold that the trust attempted to be created by the tenth clause of the will of the testatrix is void, and as to the amount mentioned therein, $500, she died intestate.