### In re JOHNSON'S WILL.

(*Surrogate's Court, New York County.* June 19, 1889.)

1. WILLS—UNDUE INFLUENCE.

Testatrix's will was prepared by a stranger, without a personal interview with her, under directions of her son, J., one of the executors named therein, who

was present at its execution. The will was, in the main, an equitable distribution of her property among her descendants, though J.'s family was favored to some extent, and the children of a deceased son, for whom she had expressed an intention to provide, were omitted. A will had been drawn shortly before, with substantially the same provisions, but there were doubts as to the validity of a provision for J.'s daughter, and he probably procured the execution of the later will to remove those doubts. S., another son of testatrix, and a co-executor, was not notified of the change in the will. J. had been given considerable sums of money by testatrix just before her death, the receipt of which he denied on oath. J. testified that testatrix read the will herself, while her daughters stated that she could read nothing but her name. It appeared from credible testimony that testatrix heard the will read, and expressed her satisfaction therewith. *Held*, not sufficient evidence to warrant a finding that the will was procured by J.'s undue influence.

2. TRUSTS—VALIDITY—UNDEFINED BENEFICIARY.

A bequest of money to executors in trust, to be invested for 30 years after the death of testatrix, the income to be applied to the care of testatrix's grave for that period, when the principal is to be paid to a legatee, is void, there being no defined beneficiary of the trust.

Petition to revoke probate.

*Milton S. Guiterman,* for petitioner. *James P. Nieman,* for executor Samuel Johnson. *Wm. J. Gaynor,* for executor Joseph M. Johnson. *L. A. Fuller,* special guardian.

RANSOM, S.    The circumstances attending the preparation and execution of the will of the decedent, as disclosed by the evidence, fully warranted the special guardian in filing his petition for the revocation of probate, that a searching inquiry into the facts connected therewith might be had.    No provision is made for the children of a deceased son, who are represented by the special guardian, though within three months she had stated to their mother that she "would look after them, and was sorry that she had not done more for them."    One daughter of another son, Joseph M. Johnson, who was also one of the executors, is given a special legacy of $1,000, and another daughter is given $500 on the termination of the trust created for another use, the validity of which is put in issue.    With those exceptions the will is framed in accordance with a scheme for an equitable distribution of the estate, though the shares of two of the sons are given to their wives.    The proofs show that the decedent was of sound mind and memory, and that the requirements of the statute were substantially complied with in respect to the execution of the instrument.    It was prepared under the direction of Joseph M. Johnson, by a lawyer who was a stranger to the decedent, and without a personal interview with her, and Joseph M. was present at the execution.    Samuel Johnson, another son, who is also named as an executor and is a lawyer, had taken memoranda for a will three months before, but he states that he did not prepare one, though his sister, Mrs. Newman, supposed that he was the draughtsman of such a will, and of another which was executed a few weeks before the one under consideration, and containing the same disposing provisions.    Within five weeks of the decedent's death $1,900 out of $2,000, which she had deposited in the Kings County Savings Bank, was taken out on three drafts.    The last was for $1,000, and was dated December 17, 1887, and was drawn to the order of Joseph M. Johnson, to whom the officer of the bank states it was paid.    She also had an account in the North River Savings Bank in this city, and two sums of $70 and $150 were drawn January 16, 1888, and another of $75 was drawn on January 18th.    Each of the drafts was drawn in the handwriting of Joseph M. Johnson.    On the day following the last draft she died.    The testimony of Joseph M. Johnson, who was called by the special guardian, is unworthy of belief in matters where his interest is involved.    He testified that he had not received the $1,000 from the Kings County Savings Bank on December 17, 1887, in which statement he was flatly contradicted by the officer of the bank.    He also testified that the decedent read the will when he presented it to her, though the testimony of his sisters,

who were interested in having the will sustained, shows positively her ina-
bility to read English, except her name.   He confessed that he was a bank-
rupt in means, and that for this reason his wife was made a legatee and dev-
isee of a share of the estate which otherwise would have gone to him.   As
the subscribing witnesses were not informed of the contents of the will, the
agency which Joseph had in its procurement and the manner in which his
children are favored by its provisions; the fact that it was redrawn without
the knowledge of his brother and co-executor, Samuel; the fair inference that
he had influenced the decedent to make him a gift of $1,000, if not other
sums, during the last few weeks of her life; the disinheritance of grandchil-
dren for whom she had expressed affection; and, further, an erroneous state-
ment in the instrument of the occasion of this special bequest of $1,000 to
Joseph's daughter,—would lead to grave doubts of the will being the dece-
dent's free act and deed, and raises a suspicion that it was procured by the
undue influence of Joseph, exerted at a period near his mother's death, when
she was weak from a protracted illness.   But the testimony of Mrs. Newman,
her daughter, with whom the decedent had lived since the death of her hus-
band, and that of her son Samuel Johnson, shows that the will in question
made the same disposition of her estate as the previous instrument; and
Mrs. Newman testifies that she read both papers to the decedent, who ex-
pressed her satisfaction in respect thereto.   The reason given for its being
redrafted was because the middle name of Joseph Johnson was omitted, and
the name of his wife, who was made a legatee, was spelled wrongly, and that
the decedent wished to have some ambiguity removed in respect to the cause
of the special bequest of $1,000 to Joseph's daughter.   These unimportant
changes may have been suggested by Joseph under the belief that he was
subserving the interest of himself and his family.   I think that they were.   That
the grandchildren were disinherited affords no ground for revocation of the pro-
bate of the will.   If Mrs. Newman is to be believed, the instrument reflects
the decedent's testamentary wishes.   The contestants have not made out such
a case as to lead me to discredit her statement.

The fourth clause is as follows: "I hereby give and bequeath to my said
executors, or such of them as shall qualify and take upon themselves the ex-
ecution of this my will, and the survivor of them, and their successor or suc-
cessors, the sum of $500 in trust, to be kept securely invested by them for the
period of thirty years after my death, and the interest and income of such sum
to be applied and used for the purpose of keeping my grave and burial plot in
good state and condition, and at the end and expiration of said period of thirty
years the said principal sum of $500 shall be paid to my granddaughter Gus-
sie Johnson, daughter of my son Joseph M. Johnson, for her own use and
benefit, and, in case of the death of said Gussie Johnson before the expiration
of said period, the said principal sum shall at the expiration of said period, be
divided among the same persons, and in the same manner, as my other prop-
erty, as specified in paragraph nine of this will."   It is contended by the spe-
cial guardian that this trust is void, and that as to the sum therein mentioned
she died intestate.   In the case of *Smith* v. *Edwards*, 88 N. Y. 92, the will
of the testator directed, by the sixteenth clause, as follows: "I have $30,000
invested in United States registered bonds, which I order and direct to have
kept invested until my youngest grandchild, now born, or that may hereafter
be born before final distribution of my estate, shall be of full and lawful age;
and that my executors, out of the interest and net increase thereof, keep up
and in good order and condition all stones, railings, etc., in and about the Ed-
wards lot, in the Fayetteville cemetery; * * *  and that they make up
out of said increase and interest any deficiency there may be in funds to pay
legacies and meet the other provisions of this will; and may from time to
time, after five years from the time of my death, make division and distribu-
tion of any surplus that may then be in their hands; and also, if they see fit,

at the same time divide and distribute $10,000 of said principal or bonds thus invested all between my four children  *  *  *  in the proportion of my aforesaid legacies and bequests severally to them,  *  *  *  and may thereafter from time to time make division and distribution of other interest and increase between said children and grandchildren, in the same proportion; and if either shall die before payment, leaving issue, then his or her aforesaid legacies and portion to his or her children.  *  *  ,*  And when my youngest grandchild born, and that may within twenty years be born, shall arrive at full age, or if a granddaughter shall sooner be lawfully married, my executors shall divide the remaining $20,000, (now in such bonds,) and such increase as they may then have, into two equal parts, and shall divide one moiety or part thereof equally between my four children,  *  *  *  and shall divide the other moiety or half equally between all of my grandchildren who may then be living, including such as may hereafter be born.  *  *  *"  The court held that the whole bequest was invalid, because it suspended the absolute ownership for more than two lives in being at the death of the testator, and that as to the $30,000 the deceased died intestate.  Also, see, Holland v. Alcock, 108 N. Y. 312, 16 N. E. Rep. 305.  There is no beneficiary in existence who is interested in or can demand the execution of the trust, and, as in Holland v. Alcock, supra, the absence of a defined beneficiary is, as a general rule, a fatal objection to any attempt to create a, valid trust.  I therefore hold that the trust attempted to be created by the tenth clause of the will of the testatrix is void, and as to the amount mentioned therein, viz., $500, she died intestate.