(60 Misc. Rep. 394.)

## In re TALLMADGE'S ESTATE.

(Surrogate's Court, Montgomery County.   August, 1908.)

1. WILLS (§ 524*)—CONSTRUCTION—BENEFICIARIES.

Testator gave the entire income of his estate to his wife for life, his executor at her death to divide the remaining estate between his sisters and brothers, or their heirs.  The executor had power to sell the real estate to carry out the provision.  At the time of making the will, and at testator's death, he had one brother and two sisters.  *Held*, that it was the intent of the testator to include within his bounty the persons answering the description of his beneficiaries at his death, and only such persons constituting that class, at testator's death, or the heirs of such persons, share in the distribution.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1117; Dec. Dig. § 524.*]

2. WILLS (§ 524*)—CONSTRUCTION—VESTING OF ESTATE.

Where testator gave the income of his estate to his wife for life, and directed his executor at her death to divide the remaining estate between his brothers and sisters, or their heirs, *held*, the vesting of the residuary estate occurred after the death of the life tenant and in such persons as were beneficiaries at the death of testator, and in case of their death during the interim, then decedent's heirs.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1117; Dec. Dig. § 524.*]

In the matter of the estate of William H. Tallmadge, deceased. Controversy to construe will.  Decree rendered.

Jere S. Sitterly, for executor.
Geo. M. Albot, for Elijah H. Tallmadge and others.
W. Barlow Dunlap, for Bershe Grosvenor.
Geo. C. Stewart, for State Comptroller and Mary Vunck.
Earl V. Ausman, as special guardian for minors.

MYERS, S.  The testator lived for many years and died at or shortly after midnight of the 24th day of December, 1901, in the town of Glen, Montgomery county, N. Y., leaving a last will bearing date on the same day.  The third and fourth clauses in said will read as follows:

"Third. I give and bequeath to my said wife the income of all real and personal property of which I shall die seized, during the term of her natural life.

"Fourth. At the death of my wife, I hereby direct my executor, hereinafter named, to divide my remaining estate between my sisters and brothers or their heirs, share and share alike, and I hereby empower and authorize my executor to sell and convey any real estate necessary to carry out this provision."

The will was drawn by the executor named therein.  He is not a lawyer, but has drawn many wills.  The will was prepared about two weeks before its execution, the draftsman taking instructions from testator and writing them down in his presence and the presence of his wife.  It may be safely assumed, therefore, that the wording of the will is practically in the language of the testator.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The widow lately died, and the controversy now arises between brother and sisters living at the death of testator, and the descendants of deceased brothers and sisters, over the distribution of the residue of the estate under the terms of the "fourth" clause of the will. At the time of making the will and his death, testator had living Elijah Tallmadge, a half-brother, residing in an adjoining town; Lucy Hall, a sister, residing in the same town with testator; and Cynthia Bevis, a half-sister, residing in an adjoining county. He had other brothers and sisters who died prior to the making of the will, some having died many years prior thereto, viz.: John S. Tallmadge and Ira Tallmadge, brothers; Mary Ann Harris, Caroline Van Derhoof, Unis Ocham-paugh, and Emeline Van Derhoof, sisters and half-sisters. Emeline died more than 30 years before, leaving no descendants. Each of the others left children, some of whom also died prior to the death of testator, leaving children; and, as a result, 19 nephews and nieces and 11 grandnephews and nieces are interested at this time in the construction of said clause. Cynthia Bevis, the half-sister, died in April, 1907, and prior to the death of said widow, leaving a husband and one daughter.

The cardinal principle of interpretation is to carry out the intention of the testator, if it is lawful and can be discovered. The construction of every will, therefore, must be determined from the language with which testator expresses himself therein, and from the facts and circumstances surrounding him at the time. As no two persons are apt to, or do, use just the same language in expressing their ideas, or view matters under like conditions, so no general rules have been devised which are adapted to all cases. Considering and giving all due weight to the cases cited and relied upon by learned counsel herein as pointing toward the intention to be gathered from testator's language, I am nevertheless further convinced that cases are of little aid, except so far as they lay down principles which aid in arriving at the true intention of testator. Far less danger of perverting the privilege of construing the will into reconstructing it will arise, it seems to me, by laying aside, for the moment, rules of construction, and reading the language as it would strike the mind of one unacquainted with such rules.

The first question that naturally arises in the construction of this will is: Of what time does it speak as to the beneficiaries? It is the general rule that a will speaks as of the death of the testator, in the absence of a clear indication of his intention that it or any part of it shall refer to another period. As to parties, there does not seem to be any dispute that the rule applies; and I am of the opinion, from a reading of the will and from the facts and circumstances surrounding testator, that he intended to include within his bounty such persons as answered his description of the beneficiaries at his death. The possibility of the death of one or more such persons before distribution occurring to testator, it may be fairly assumed from all the circumstances that, so far as preventing a lapse in this respect, the word "heirs" was used by him, not as a word of limitation, but as a word of substitution. One sister having died before the vesting in possession

of the estate, the question arises at this time as to when the estate vested in the beneficiaries. By the terms of the will no trust is expressly created, yet the power of sale of the real estate given to the executor at the death of the life tenant, with a direction to him to distribute the residuary estate at that time, shows a clear intention on the part of testator that such an estate should vest in the executor as would enable him to sell and give good title to the real estate and distribute the estate, and is sufficient, I believe, to create a trust. I recognize the fact that the tendency is to encourage a construction which leans to the vesting of legacies, yet the purpose and intention of the testator must prevail; and, as the court said in Smith v. Edwards, 88 N. Y. 106, "We must still construe the will, and not make it over to suit our own notions of what might have been best." In Warner v. Durant, 76 N. Y. 136, a rule was stated to be:

"Where there is no gift, but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiaries will not take place until that time arrives."

This rule clearly applies to this case, and I am of the opinion that vesting in the beneficiaries occurred after the death of the life tenant and, at that time, in such persons as were included or answered to the beneficiaries at the death of testator, and, in case of decease during the interim of any such, then in decedent's heirs.

The remaining and principal question, and the one most difficult of solution, is to determine among what persons testator intended to distribute his estate at the death of the life tenant. Counsel for the brother and sisters living at the death of testator contends that the direction to divide the estate among "sisters and brothers, or their heirs," constitutes a bequest to a class; and only such persons constituting the class at testator's death now share in the distribution. The courts have frequently held, and I believe the rule is well established, that a gift to a class, without naming or identifying the persons included within such class, includes only such persons as are living at the death of the testator. Schouler on Wills, § 563, says:

"In a devise the rule is, unless the contrary intention is clearly apparent, that the gift is presumed to be intended for only those of the class who are in being at the death of the testator."

Counsel for the daughter of one brother who died before the making of the will contends that, by the use of the plural word "brothers," when there was in fact only one brother living, a clear intent is shown to include all brothers and sisters, living and dead, and, therefore, the estate must be divided into nine equal shares; and quotes in support of this contention the language of Page on Wills, at page 315, as follows:

"The word 'brother,' in a devise to the brothers of testator, has been held under special circumstances to include a brother who was dead when the will was executed."

This rule is founded upon the decision in Fuller v. Martin, 96 Ky. 500, 29 S. W. 315, which case is cited by counsel. The language used by testator in the case above is almost identical with that of

the will in question, and the circumstances were very similar; and the decision might be given some weight, were it not for the fact that, at the time, there was in force in the state of Kentucky a statute (Gen. St. Ky. 1888, § 1, art. 2, c. 50) which provided as follows:

"When a devise is made to several as a class, or as tenants in common, or as joint tenants, and one or more of the devisees shall die before the testator, and another or others shall survive the testator, the share or shares of such as so die shall go to his or their descendants, if any."

The only question for the court in that case was to determine the persons constituting the class, the distribution being made according to the statute. I have given considerable thought and consideration to the use of the plural in this case, but am unable to give its use sufficient weight to construe therefrom an intention by testator to include among his beneficiaries nephews and nieces. So far as the will and circumstances show, its use may have arisen from a slip of expression by the testator, or by error of the draftsman, and may be rejected. Looking at the language of the will still further, and considering the use of the words "or their heirs" as an indication of intent, we are confronted with the fact that the word "heir" is quite, if not most, frequently used by persons unskilled in the law without regard for its strict technical meaning, and might easily and appropriately have been used to designate the heirs of the living brother and sisters, and not those of the dead ones. Neither can the intent, or the construction, be made upon the use of "or"; for "or" and "and" are sometimes synonymous, and their popular use is loose and frequently inaccurate.

The amount of the estate for distribution is $5,931.30 plus some accumulated interest, subject to the executor's commissions and the expenses of this accounting. Whether it was testator's intention to distribute this property among those who were most nearly related to him at the time of his death and with whom there was no unfriendly feeling, so far as appears, or to make a general family distribution, must quite largely be gathered from a consideration of the relationship to testator of the parties claiming under the will, their residence with respect to that of testator, and the relations existing between them. Two sisters and a brother were living at the death of testator; and, by using an expression which included them without any doubt, it is clear his paramount intention was to provide for them. While no mention is made of deceased brothers and deceased sisters or nephews and nieces, yet it is not unreasonable to assume, and it is quite probable, that he might have intended to include within his bounty certain nephews and nieces living near him with whom he was acquainted and apparently not on unfriendly terms; but to include such would necessitate letting in the 30 nephews and nieces and grand nephews and nieces, many of them living in distant parts, who we may assume testator never saw and possibly never heard of. It is possible that he intended in include such, but quite improbable, without a more clear and direct expression to that effect than can be gathered from any language contained in the will, or from the circumstances and surrounding conditions. To so construe would be to specu-

late upon testator's intention, and would in effect make the terms of the bequest so general, as regards objects, as to cause practically a distribution of the estate according to the statute of distribution.

There having been persons living at the death of testator answering the description of the class named and capable of taking, I am of the opinion that no such broad construction can be placed upon the language used by testator, but that the language and circumstances only warrant the arrival at a conclusion that testator intended to include the sisters and brother living at his death, and not the heirs of such as were then dead; and I do so find and construe the same. The construction adopted may not be altogether free from doubt, but such construction has been put upon the will as leaves in my mind the least doubt that testator's intention will be carried out.

Findings and decree may be prepared accordingly.

Decreed accordingly.