COUGHLIN et al. v. FAY et al.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

WILLS—CONSTRUCTION—"GENERAL FUND" OF ESTATE.

Where a codicil provided that a note held by the testator, which was not specifically mentioned in the will, but was a part of the residuary estate, should be held in trust for the benefit of a daughter during her life, and after her death, in case she left no issue, should go into the general fund of the estate, the expression "general fund of my estate" means the residuary estate.

Submission without action, on agreed facts, of a controversy between Teresa Coughlin and Thomas J. Keenan, as plaintiffs, and James Fay, executor of Owen Keenan, deceased, and James Francis Fay, as defendants, as to the construction of a will. Judgment for plaintiffs.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Charles Strauss, for plaintiffs.
Daniel Daly, for defendants.

WILLIAMS, J. Owen Keenan died August 25, 1877, leaving a will and codicil, which were admitted to probate September 11, 1877. The testator was twice married. At the time of his death he left three children by his first wife, named Marcella, John J., and James T., and a grandchild, son of another child by his first wife; such child being deceased, and the grandchild being named James F. Fay. The testator also left a second wife, his widow, and three children by her, named Teresa, Thomas J., and Eugene. The widow and Eugene have died since the death of the testator, and the plaintiffs are the two only surviving children of the testator by his last wife, the widow. The defendants are the grandson, James F. Fay, and his father, James Fay, as sole surviving executor of the will of the testator.

By the will, dated July 14, 1877, the testator, after providing for the payment of his debts and funeral expenses, by the second clause, gave his daughter Marcella a house and lot during her life, if any, at her death, and, in the event there were no such issue, to testator's heirs; also, $300 per year for 10 years, to be paid out of the testator's estate, described in the fifth clause of the will. By the third clause he gave to his executors, as trustees of his son John J., another house and lot, providing that if such son should become a careful, prudent, steady, and sober man, it was his wish and desire that the trustees should convey the house and lot to the son; but in the meantime the trustees should pay the income of the house and lot to such son quarterly, if he became a careful, prudent, steady, and sober man, but, if he did not, the trustees should accumulate the income, and pay it in whole or in part to such son whenever the trustees should deem it proper and prudent so to do; and, if such son should not return to New York City within 20 years from the date of the will, the trustees should sell the house and lot, and divide the proceeds equally between his daughter Marcella and his son James F.; and, in case of their death, the lawful children of each to take the parent's share, or, in case there be no children, the survivor to take the whole. By the fourth clause he gave to his son James F. another house and lot, upon which his executors were directed to expend $4,500; and, in case of his death without lawful issue, the house and lot to revert to testator's heirs. By the fifth clause he gave to his three children, Teresa, Thomas J., and Eugene, his wife (the widow), and his grandson, James F. Fay, several other houses and lots, for the support of his wife, and the support, maintenance, and education of his said three children until the youngest became

21 years of age, and directed his executors to sell all the real property therein before described (except that devised to Marcella, James F., and John J.), or any part of it, at any time, and out of the proceeds to pay over to his wife (the widow), for her own use, and in lieu of her dower in the property described, the one-third part of the same, and the remainder to be divided in equal shares between these children and the grandchild, and invest the same for them until each should attain the age of 21 years, when each should receive his or her share, and in case of the death of either of the four, leaving lawful issue, such issue to take the share of their parent, and further directed the executors to pay over to his wife (the widow) one-third of the income derived from the real estate, for her own use, and in lieu of dower interest in his other real estate, which she should release within three months of his death; the remaining two-thirds to be used for the support, maintenance, and education of the children as therein provided; his grandson not to participate in the income of the estate until sold, or the younger children became 21 years of age; and in case of the death of either of the four before the age of 21 years, without issue, his share to go to the survivors then living, or their lawful issue, if any one be dead.    By the sixth clause he gave his sister, Marguerite Reynolds, $1,000, to be paid from the income from the real estate described in the fifth clause.    By the seventh clause he gave his nephew, Owen Keenan, $1,000, to be paid from the income of the real estate described in the fifth clause.    By the eighth clause he gave all the rest, residue, and remainder of his estate, real and personal, to the trustees of his children named in the fifth clause, and his wife, to be used and expended for them in accordance with the provisions of the fifth clause; and, by the last clause, he appointed executors of the will.    By the codicil, dated August 24, 1877, he gave his brother, Patrick, his horses, wagons, robes, etc., and to his executors, in trust for his daughter Marcella, a promissory note made by James F. Keenan for $5,000, dated July 11, 1877, payable three years from date, with interest,—the income therefrom for her use and benefit during her lifetime, and after her death to go to her issue, if any, but, if she had none, then to go in the general fund of her estate, to be divided as therein set forth,—and expressed his wish as to Marcella's living with his wife (the widow) during life, or until married, etc.

It is agreed between the parties that the property devised under the second clause of the will was worth $12,000; under the third clause, $14,000; under the fourth clause, $25,000; under the fifth clause, $100,000; and, under the eighth clause, a bond and mortgage, $1,130, three notes of James F. Keenan of $5,000 each, and $1,000 insurance stock.    Since the death of the testator, his daughter Marcella has died, without issue; and the $5,000 note described in the codicil is in the hands of the only surviving executor, James Fay, awaiting the result of this submission.    The question submitted is, what is the meaning of the term "general fund of my estate," in the codicil, and does this provision of the codicil make the $5,000 a part of the residuary estate, to be distributed under the eighth clause of

the will?   If the answer to this question is in the affirmative, judgment is to be rendered for plaintiffs, giving them each one-half of the fund; if in the negative, then in favor of the defendant, giving the plaintiffs and defendant James F. Fay each one-third of the fund. The plaintiffs claim the "general fund of the estate" was that disposed of in the eighth clause, while the defendants claim it was that disposed of by the fifth clause.   It seems to us clear that by the expression "general fund of my estate," as used in the codicil, was meant the residuary estate disposed of by the eighth clause of the will.   The note for $5,000 belonged to this residuary estate before it was disposed of by the codicil, and it is reasonable to conclude that the intention of the testator was to return it to that fund when it had served its purpose under the codicil.   The apparent design of the codicil was merely to make provision for his daughter and her lawful issue.   There was no design, beyond that, to change the general scheme of the will, as between his widow and her three children, and the grandchild by a former wife.   When the fund referred to in the codicil was no longer available for the purposes of the daughter and her issue, then the intention was that it should go back where it came from, and be used for the benefit of his widow and her children.   Moreover, the fund created under the fifth clause could in no proper sense be regarded as a "general fund."   It was a disposition of certain real estate, specifically described.   The fund created under the eighth clause was general in its nature.   It was a disposition of all property of every kind, real and personal, remaining, and not specifically disposed of by the will.   The fifth clause disposed of specific pieces of real estate, while the eighth clause disposed generally of the residuary estate.   The one was specific in its nature, while the other was general.   In Smith v. Edwards, 88 N. Y. 92, the phrase "general fund" was construed to mean the residue of the estate not specifically disposed of by the will.

Our conclusion is that the plaintiffs are right in their contention, and that judgment should be ordered in their favor. without costs. All concur.